CROWE, Appellant v. STATE, Respondent

(194 N.W.2d 234)

(File No. 10871. Opinion filed February 1, 1972)

**William J. Janklow, Francis C. Lynch, Jr.,** Rosebud, for petitioner and appellant.

**Gordon Mydland,** Atty. Gen., **Walter W. Andre,** Asst. Atty. Gen., Pierre, **Larry F. Hosmer,** State's Atty., Yankton, for respondent.

WOLLMAN, Judge.

This is an appeal by petitioner from a judgment denying his petition for post-conviction relief under the provisions of SDCL 23-52.

Petitioner was charged with the crime of first degree rape in Yankton County, South Dakota, on June 22, 1966. He was arrested on June 23, 1966, appeared the following day in municipal court in Yankton and was committed to jail upon his failure to post bond.

Petitioner appeared before Circuit Judge C. C. Puckett on June 27, 1966, at which time attorney Louis French of Yankton was appointed to represent petitioner.

On July 12, 1966, petitioner waived preliminary hearing in municipal court and was bound over to circuit court for trial.

On July 16, 1966, petitioner was arraigned before Judge Puckett and entered a plea of guilty to the first degree rape charge.

The state's attorney and defense counsel waived presentence investigation and report. The state's attorney introduced petitioner's FBI "rap" sheet and a picture of the victim of the crime. Petitioner was then sentenced to a term of 40 years in the South Dakota State Penitentiary. Additional facts will be discussed in connection with the several questions raised by petitioner.

Petitioner contends that because he was not informed of the consequences of his plea his guilty plea was involuntary and unintelligent and thus was obtained in violation of his constitutional rights.

The transcript of the arraignment of July 16, 1966 indicates that Judge Puckett advised petitioner that he had a right to a jury trial, that he had the right to be free on bond until the next term of court, that he had the right to be confronted by the witnesses against him and that he had the right to have witnesses called on his behalf at state expense. Petitioner was not advised by the court of his constitutional privilege against compulsory self-incrimination nor was he advised by the court of the minimum and maximum penalties for the crime of first degree rape.

It was settled in Boykin v. Alabama, 1969, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed. 2d 274 that in order to uphold a guilty plea the record must clearly show that the defendant knowingly and voluntarily waived his constitutional right of the privilege against compulsory self-incrimination, the right to trial by jury and the right to confront his accusers. In effect, Boykin held that Rule 11 of the Federal Rules of Criminal Procedure is applicable to the states as a matter of federal constitutional due process and that the record must show that the defendant had an understanding of the nature and consequences of his plea before a guilty plea can be sustained.

This court has held that Boykin should be given prospective application and that it is applicable only to guilty pleas entered after June 2, 1969. Nachtigall v. Erickson, 85 S.D. 122, 178 N.W.2d 198; Langdeau v. State, 85 S.D. 189, 179 N.W.2d 121. We must, then, review the facts in the light of the totality of the circumstances

rule applicable to pre-Boykin cases. This court has held that where a defendant appears with counsel and pleads guilty to a criminal charge it is presumed that he has been informed of his constitutional rights by his counsel and it is not necessary for the court to advise him of such rights before accepting a guilty plea. See Application of Dutro, 83 S.D. 168, 156 N.W.2d 771; Nachtigall v. Erickson, supra; State v. Brech, 84 S.D. 177, 169 N.W.2d 242.

The record of the arraignment reveals the following exchange between the court and petitioner:

"Q. You were before the court a couple of weeks ago for the appointment of an attorney since you have been arrested on a charge of Rape in the First Degree. I appointed Mr. French as your attorney. I presume Mr. French has advised you of your rights to a trial by jury, if you wish, You understand that?

"A. Yes sir.

"Q. You're entitled to be out on bond until the next term of court in this county which will be in September, you're entitled to be faced by the witnesses against you, if you wish them. You are entitled to have any of your own witnesses for you, all this at the State's expense. You understand. Mr. French has explained this to you I take it. You know what you are doing this morning.

"A. Yes.

"Q. This is of your own free will?

"A. Yes sir."

After the information was read in open court by the state's attorney, the defense attorney stated that he and petitioner were ready to enter a plea, whereupon petitioner pleaded guilty to the charge of first degree rape set forth in the information.

Petitioner is an American Indian who was 49 years old at the time of his arrest in 1966. He is able to read and write the English language. His formal education ended during the 8th grade of public school. His Federal Bureau of Investigation identification record, which will be discussed in greater detail later, reveals that petitioner's first contact with the judicial process occurred in the fall of 1937 when he received a ten-year federal penitentiary sentence on a charge of rape on an Indian reservation. Thereafter, petitioner was at various times charged with grand larceny, breaking jail, fourth degree burglary and escape from jail. He also has a record of numeorus charges of public intoxication. Thus it is fair to say that when petitioner appeared in circuit court on July 16, 1966, he was not totally unfamiliar with the processes of the criminal law.

Petitioner testified at the post-conviction hearing that Mr. French told him during their second conference how serious the crime was that petitioner was charged with. Mr. French, who died prior to the evidentiary hearing on the post-conviction petition, was an experienced attorney in Yankton, South Dakota. He had served as Yankton County State's Attorney for four years and had represented numerous defendants in criminal trials in his capacity as a private attorney. Judge Puckett testified at the post-conviction hearing that:

"Well, I was advised of the charge, the serious charge which had been filed against Percy Crowe and I felt that I wanted him to be represented by competent counsel and Mr. French was the man; he was an experienced lawyer, had been State's Attorney for four years, and had also defended many other criminals when he was not State's Attorney, so I appointed Mr. French because I wanted Mr. Crowe to have competent counsel."

In view of the fact that petitioner had had considerable experience with courts and criminal procedures prior to the offense in question, including a prior conviction on a charge of rape which resulted in a ten-year penitentiary sentence, and in view of the fact that he was represented by competent, experienced

counsel who, by petitioner's own testimony, had informed him how serious the charge against him was, we cannot say that the circumstances attendant upon petitioner's guilty plea were such as to render petitioner's plea unintelligent and involuntary. Notwithstanding the inexplicable failure of the trial court to advise petitioner of the minimum and maximum penalties for the charge against him and of his privilege against self-incrimination, we do not believe that petitioner has carried his burden of proof of showing that his guilty plea was involuntary and that his constitutional rights were violated. Nachtigall v. Erickson, supra; State v. Brech, supra; McMann v. Richardson, 1970, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763; Parker v. North Carolina, 1970, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785; Brady v. United States, 1970, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747.

Petitioner contends that he was deprived of his constitutional right to the effective assistance of counsel because his court-appointed counsel failed to provide more than mere perfunctory and casual representation.

This court has held that:

"The constitutional guaranty of the right to defend assisted by counsel means adequate and effective assistance and the trial court has the duty to appoint competent counsel to represent and advise an indigent accused. A mere perfunctory and casual representation does not satisfy the constitutional guaranty. * * *

"The right of an accused to the services of legal counsel envisages that his attorney will investigate and consider possible defenses and, if none, other procedures, and exercise his good faith judgment thereon. It does not contemplate that an accused may take charge of the case after an attorney has been appointed, or dictate its course, or make counsel's educated judgment the pawn of an unreasonable and obdurate malefactor." State ex rel. Burns v. Erickson, 80 S.D. 639, 129 N.W.2d 712, 715.

Petitioner alleges that he was denied the effective assistance of counsel in four different respects. First, he alleges that the time period between counsel's entry in the case and petitioner's plea did not offer adequate opportunity for investigation and that the limited opportunity presented was not grasped. Petitioner's attorney was appointed by Judge Puckett on June 27, 1966, and, according to petitioner, did not visit petitioner until three or four days after the appointment. Petitioner argues that the time period between Mr. French's initial visit and the date of the plea provided an opportunity for only a very limited investigation and preparation of a defense.[1]

 It should be noted that this case does not involve a situation where counsel was appointed within a relatively short time before the date of trial. Even in such cases, late appointment does not necessarily compel a finding that a defendant was denied the effective assistance of counsel. See State v. Watkins, 85 S.D. 573, 187 N.W.2d 265; Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. The next term of circuit court in Yankton County following defendant's arrest was scheduled for September 1966. Petitioner and his counsel were thus under no compulsion to make a hasty decision regarding arraignment and plea. The arrangement for the arraignment and plea was initiated by petitioner's experienced counsel and was not the product of an imminent trial date.

Petitioner testified that when Mr. French first visted him he asked petitioner if he was the man "that raped this lady" and inquired of petitioner; " * * * how old I was, how much — how far I went in school; what I did for a living; just — I don't remember." Mr. French also told petitioner that " * * * he was going to go see this lady." Petitioner testified that this first visit with Mr. French lasted about one-half hour.

---

1. Following Mr. French's untimely death, his office files were purchased by another Yankton law firm. It was stipulated at the post-conviction hearing that no file was found in Mr. French's office concerning petitioner's case. Petitioner argues that this leads to the inference that Mr. French's investigation and preparation on petitioner's behalf was so cursory that he did not even bother to open a file. We believe that there could be logical explanations for the absence of any separate file on petitioner's case.

Mr. French returned to the jail three or four days after the first visit and had another conference with petitioner during which, according to petitioner:

"He came in and said I was guilty as hell, that I didn't have a chance; there was no way out for me. And he told me how serious the crime was. He said I didn't have a chance.

"Q What do you mean he told you how serious the crime was?

"A He said the crime was serious and that I didn't have a chance.

"Q All right. Did you discuss anything else?

"A I don't remember."

■■ The fact that counsel told petitioner that he was going to visit the victim of the crime and that upon his return three or four days later he made the statements to petitioner set forth above supports the conclusion that Mr. French did investigate the circumstances of the crime and did talk to the victim and that there was a factual basis for his advising petitioner that the crime indeed was very serious and that petitioner was guilty of the offense charged against him. We will not assume that an experienced, competent attorney would advise a defendant to plead guilty to a charge as serious as first degree rape without first satisfying himself by personal investigation that the defendant was in fact guilty and that there was no realistic way to avoid a conviction at the hands of a jury.

■ We believe it appropriate to observe that there comes a time when it is defense counsel's duty to advise a defendant that in the light of the facts and circumstances surrounding the offense his plight is serious indeed and that there appears to be no escape from the harsh truth that he is in fact guilty of the offense charged. It would be ineffective assistance indeed for an

attorney, either out of inexperience or out of a desire to commiserate with his client, to lull a defendant into believing that the case against him is less serious than it actually is or that the evidence of his guilt is slight when in fact it is overwhelming and irrefutable.

Petitioner contends that his attorney did not adequately consider possible defenses since he failed to ask for a preliminary hearing and, contrary to the express desires of petitioner, failed to arrange for a psychiatric examination.

■ We agree that a preliminary hearing can be of critical importance to the preparation of criminal defenses. It provides an opportunity to explore, among other things, the exact circumstances surrounding the identification of the defendant, the complete background of the witnesses and the complete account of the alleged crime. See Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387. Petitioner alleges that it is impossible to imagine a tactical basis for the decision to waive a preliminary hearing. We do not agree with this contention. There could be a number of valid reasons why experienced defense counsel might wish to waive a preliminary hearing. Experienced defense attorneys and prosecutors know that when the state's witnesses are clear and convincing in their testimony the state's hand can be strengthened by the dress rehearsal for trial that is afforded by a preliminary hearing. In rape cases a victim's resolve may well be strengthened once she has gone through the ordeal of cross-examination at the preliminary hearing. A properly conducted preliminary hearing can preserve testimony for trial. Counsel's failure to recite the reasons for waiver upon the pages of the record thus does not compel, nor even support, a finding that counsel did not render effective assistance.[2]

■ Petitioner testified that just prior to the time that he and Mr. French went up to circuit court " * * * I asked him if I could take one of them medical examinations and he said we

<hr>

2. Petitioner argues that the record is not positive that Mr. French appeared with defendant in municipal court at the time preliminary hearing was waived. The trial court's finding that defense counsel was present at the time of waiver is supported by evidence in the record and is not clearly erroneous.

was too late, didn't have time, to just go ahead and come on up here." This, argues petitioner, buttresses his claim that he was denied the effective assistance of counsel. It is true that petitioner has a long history of arrests for public intoxication. In his statement to the court following petitioner's plea, Mr. French said that petitioner's prior trouble with the law was the result of drinking and that for several days prior to the incident on June 22, 1966, petitioner had been drinking heavily. In his own statement to the court, petitioner said "Well, what Mr. French said. All my trouble has been drinking. When I have work, I never get into trouble. When I am out of work, I get to drinking and get into trouble."

Although petitioner's encounters with the law have apparently resulted from his inability to control his drinking, this is not to say that his voluntary intoxication at or before the time of the offense in question was a defense to the crime charged or was a condition that made it mandatory upon defense counsel to arrange for a psychiatric examination. No claim is made that petitioner was not mentally competent to understand the nature of the charges against him or to assist in the preparation of his defense, nor is it claimed that the defense of mental illness would have been available to him.

We are mindful of the fact that in his statement to the court following the plea the state's attorney characterized petitioner as having violent propensities and as being a man who was nothing more than an animal in attacking a middle-aged lady in the manner that he did. While we do not have a full factual background of the details of the offense, the record does indicate the victim was hospitalized as a result of the attack upon her. This is not to say, however, that every defendant who commits a violent, vicious crime is perforce mentally ill and that his counsel must necessarily ask for a psychiatric examination. Although some attorneys request a psychiatric examination if the defendant in any way suggests that he desires such an examination, we are not prepared to say on the basis of this record that we must fashion a per se rule requiring reversal of a conviction obtained

by a guilty plea in every case in which the defendant later asserts that he wanted a medical examination and that his defense attorney did not accede to his request.

On the basis of the record before us, we will not substitute our theoretical judgment for that of an experienced defense attorney who had the opportunity of dealing with petitioner in an attorney-client relationship. Thus we affirm the trial court's finding (albeit denominated a conclusion) that petitioner was not arbitrarily denied a psychiatric examination and that he was not prejudiced in any way in this respect.

Petitioner contends that his counsel was ineffective in that he failed to explore procedures other than defense at trial, principally plea bargaining. Petitioner argues that this court obviously was referring to plea bargaining in that portion of the opinion in State ex rel. Burns v. Erickson, supra, which refers to defense counsel's duty of investigating and considering other procedures if there are no possible defenses available. While the general subject of plea bargaining has been much discussed recently and has received judicial sanction, North Carolina v. Alford, 1970, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162; Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427, we believe that no further discussion of this point is necessary inasmuch as it appears from the record that Mr. French did explore the possibilities of plea bargaining with the state's attorney. We quote the following from the former state's attorney's direct testimony at the post-conviction hearing:

"Q * * * as a State's Attorney did you ever engage during your term in that office in what we call 'plea bargaining' or 'plea agreement'?

"A Frequently.

"Q Did you do that in this case ?

"A No, sir.

"Q May I assume you had no discussion with defense counsel about a plea agreement or any kind of plea bargaining?

"A I had one phone call from Mr. French to arrange for the day of plea, and at this time Mr. French requested what I would do and I told Mr. French that there would be no bargaining as far as I was concerned and I was ready to try the case for whatever way it went. * * *

"Q Is it correct then that you offered no deals to Mr. French or to Mr. Crowe?

"A Absolutely not. In fact I was rather disappointed that I didn't get to try it."

The record reveals that the state's attorney had known the victim for many years, that he was quite embittered by the vicious attack upon her and that he was prepared to stand his ground and prosecute the case against petitioner to its ultimate disposition.

Petitioner dismisses the state's attorney's adamant refusal to bargain with the argument that surely effective counsel would have continued to pursue the matter and would have postponed final disposition until tempers had subsided.

The duty imposed upon defense counsel to investigate and consider other procedures if no defenses are available carries with it the duty of counsel to exercise his good faith judgment. State ex rel. Burns v. Erickson, supra. Every experienced defense attorney knows that there are cases in which it is futile to pursue the matter of plea bargaining once the prosecuting attorney has made it clear that there will be no plea bargaining.

Defense counsel can bargain only when the state is willing to bargain, and when the door has been closed by the state there is little to be gained by importuning the prosecuting attorney to bargain when defense attorney has nothing to bargain with. We can safely assume that defense counsel knew the state's attorney well and that when the state's attorney told him that there would be no plea bargaining Mr. French exercised his good faith judgment and took him at his word. Petitioner's attack on his counsel's performance in this respect finds no support in the record.

Petitioner alleges that his counsel rendered ineffective assistance because of his failure to object to the admission of improper, erroneous and severely prejudicial material during the sentencing stage of the proceedings.

After petitioner had entered his guilty plea, the state's attorney was given an opportunity to make a statement, at which time he informed the court that he had received a copy of petitioner's prior criminal record from the Federal Bureau of Investigation. He also stated that he wished to show the court a picture of the victim taken while she was in the hospital following the attack upon her. The court told the state's attorney to "Show them to the defendant and his counsel", and then asked defense counsel if he had objection to the court looking at the photograph, to which Mr. French replied "No, your Honor." The court then examined the photograph of the victim of the crime and the copy of the criminal record received from the Federal Bureau of Investigation. Neither of these documents was introduced into evidence at the time of the sentencing, although the FBI record was made a part of the file at the post-conviction hearing.

Petitioner claims that there was no statutory authority for the presentation of the FBI report and the photograph to the trial court and that counsel's failure to object to the receipt of these items denied petitioner the effective assistance at the sentencing stage of the proceedings. We believe that petitioner through his counsel validly waived any objections he may have had to the FBI report and the photograph. We can assume that Mr. French was fully familiar with the provisions of SDCL 23-48-

16[3] and 23-48-19.[4] Assuming that defense counsel could have insisted that the state be required to compel the attendance of the victim and her attending physicians as a prerequisite to the introduction of any testimony or evidence concerning the injuries that the victim received in the attack, we believe that counsel's decision to waive the requirements of the statutes can well be explained as the exercise of good faith judgment based upon his experience in prosecuting and defending other criminal cases. It is hard to conceive of any advantage that petitioner would have gained had the victim and her physicians been brought into court to testify as to the injuries inflicted upon her. Indeed, petitioner may well have stood in a worse light in the eyes of the court had such testimony been introduced.

■ While it is a matter of serious concern that petitioner's counsel did not familiarize himself completely with the details of petitioner's criminal record, we do not believe that his failure to do so warrants a reversal of petitioner's conviction. Counsel's statement to the court on behalf of his client indicates that he was generally familiar with petitioner's family, educational, occupational and social background.

We believe that the trial court's finding that defendant received the effective assistance of counsel is supported by competent evidence in the record and is not clearly erroneous. We note that Judge Hertz set forth in his conclusions that he personally knew Louis French very well and that Mr. French was an intelligent, capable, experienced and conscientious practitioner of the legal profession who was familiar with the procedures involved in both the prosecution and defense of criminal cases. This observa-

---

3. SDCL 23-48-16:
"After a plea or verdict of guilty, in a case where discretion is conferred upon the court as to the extent of the punishment, the court, upon the suggestion of either party that there are circumstances which may be properly taken into view, either in aggravation or mitigation of the punishment, may, in its discretion, hear the same summarily at a specified time, and upon such notice to the adverse party as it may direct.
"The circumstances must be presented by the testimony of witnesses examined in open court, except that when a witness is so sick or infirm as to be unable to attend, his deposition may be taken by a magistrate of the county out of court, at a specified time and place, upon such notice to the adverse party as the court may direct."

4. SDCL 23-48-19 provides:
"No affidavit or testimony or representation of any kind, verbal or written, can be offered to or received by the court in aggravation or mitigation of the punishment, except as provided in §§ 23-48-16 to 23-48-18, inclusive."

tion is supported by the testimony of Judge Puckett referred to above. We know of no rule of law that requires judges to attempt to be oblivious of that which they know perfectly well to be a fact.

██ ██ It is the duty of courts to insure that every defendant's constitutional rights are protected. There should be no hesitation in reversing a conviction if the record reveals that a defendant was not afforded the effective assistance of counsel no matter how competent, experienced and talented counsel may have been in other cases and no matter what his reputation in the community and in the Bar. The death of the attorney prior to post-conviction proceedings should not operate to prevent the vindication of a defendant's constitutional rights. On the other hand, it is not unreasonable that the claims of a defendant should be scrutinized with care when his attorney is no longer available to detail the steps he took to investigate the case and prepare the defense and to explain his reasons for making certain tactical decisions.

In summary, then, we conclude that petitioner has failed to carry his burden of proof in demonstrating that he was denied the effective assistance of counsel. Nachtigall v. Erickson, supra; State v. Brech, supra; McMann v. Richardson, supra.

Petitioner contends that his sentence should not be permitted to stand because prejudicial material was admitted into evidence after the plea of guilty and prior to sentence in contravention of SDCL 23-48-16 and 23-48-19.

As has been outlined above, after the guilty plea was received the state was permitted without objection to introduce evidence of petitioner's prior criminal record and of the victim's physical condition following the attack upon her.

Because we believe that petitioner and his attorney validly waived any objection they might have had to the receipt of the FBI report and photograph of the victim, we find it unnecessary to consider whether SDCL 23-48-16 and 23-48-19 act as an absolute prohibition to the receipt of information by the court other than

as specified in SDCL 23-48-16 to 23-48-18. We do note that the Oklahoma Court of Criminal Appeals has held that the provisions of Oklahoma statutes similar to the South Dakota statutes in question require a request by the parties that evidence be received in accordance with the statutes and make it discretionary with the trial court to pursue some other reasonable method of acquiring the necessary information for the pronouncement of judgment and sentence. See also the discussion in State v. Brech, supra, of Williams v. New York, 1949, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337.

Finally, petitioner contends that his sentence may not stand because the trial court referred to and relied on materially inaccurate information and assumptions concerning petitioner's criminal record in imposing sentence upon petitioner.

After petitioner entered his plea of guilty, the court asked the state's attorney whether he wished to make any statement, to which the state's attorney replied:

"Yes, if it please the court. The State has received from the United States Department of Justice, Federal Bureau of Investigation, a record of this defendant which shows that over the past years, since 9-3-1937, the defendant initiated his life of crime with rape. He thereupon in several instances, either committed rape or attempted rape. He has had a record over the years, up to and including this point, of violence, escape from jail, burglary, intoxication and a whole range of vile crimes. * * *"

After defense counsel made a statement, and following a short colloquy between petitioner and the court, the court pronounced sentence as follows:

"I'm going to give you a pretty stiff sentence, Mr. Crowe. I'm doing this because apparently you're a dangerous man and you don't learn your lesson. Every time you get out from the penitentiary you rape some woman again and get sent back. That's just what you have been doing for the last 30 years approximately, nearly 30 years."

The court thereupon sentenced petitioner to the state penitentiary for a period of 40 years.

The official statement required by SDCL 23-48-37 which was prepared by the state's attorney contains the following hand-written comment added by the court: "Defendant has a long list of criminal offenses, including four rape convictions. Is an habitual criminal."

Omitting the public intoxication and vagrancy charges, the petitioner's FBI record is as follows:

| | | | | |
|---|---|---|---|---|
| SO, Sioux Falls, S. Dak. | Percy Crow #1628 | 9-3-37 | rape | Hold for USM Sioux Falls S. D. 9-3-37 Rel to USM Sioux Falls S. Dak. |
| USM, Sioux Falls, S. Dak. | Percy Crow #1294 | 9-3-37 | rape | 10 yrs. USP Leav., Kans. |
| USP, Leavenworth, Kans. | Percy Crow #51730 | 10-8-37 | rape on Indian Reservation | 10 yrs. |
| Medical Center For Federal Prisoners Springfield, Mo. | Percy Crow #4322-H | 8-4-43 | rape on Indian Reservation | 10 yrs. 12-3-43 Disch CR. see not. |
| SO, Chamberlain, South Dakota | Percy W Crow #57 | 8-9-44 | Breaking jail, and G.L. | 2 yr Pen Sioux Falls, S. Dak. 8-26-44 |
| St. Prison Sioux Falls, South Dakota | Percy Crow #9729 | 8-28-44 | breaking jail G.L. | 2 yrs. |
| USP, Leavenworth, Kans. | Percy Crow #51730-L | returned 5-9-46 | rape on Ind Res and C.R.V. | 10 yrs. — owes 1402 days |
| Med Center for Fed Prisoners, Springfield, Mo. | Percy Crow #4322-H | 5-5-47 in trans from USP Leavenworth Kansas | rape on Ind. Res. | 1402 days as CRV 4322-H; cond rel 9-7-49, viol date on or about 9-29-49 (drunkenness and threat to do bodily harm) warr iss 10-6-49. (Not A Wanted Notice) |
| USM, Sioux Falls, S. Dak. | Percy Crow #3217 | 10-11-49 | Rape, on Ind. Reserv. P.V. | being ret. USP Leavenworth, Kans. |
| USP, Leavenworth, Kans. | Percy Crow #51730-L | 10-12-49 | cond. rel. vio. (rape on Ind. Reservation) | 10 yrs. 2-10-50, min. exp. V. |

| | | | | |
|---|---|---|---|---|
| SP<br>Sioux Falls,<br>S. Dak. | Percy Crow<br>#11144 | 6-8-51 | Burg. 4th Deg.<br>Esc fr. co jail. | Ct. 1, 3 yrs.<br>Ct. 2, 2 yrs.<br>conc; 3 yrs. |
| SPen<br>Sioux Falls<br>SDak | Percy Crow<br>#13511 | 9-29-59 | escape | 2 yrs |
| SO<br>Fort Pierre<br>SDak | Percy Crow<br># — — | 10-19-63 | GL | |
| SPen<br>Sioux Falls<br>SDak | Percy Crow<br>#15032 | 2-21-64 | GL | 1 yr |
| PD<br>Yankton<br>SDak | Percy William<br>Crowe<br>#21109 | 6-23-66 | 1st deg/rape | |

Petitioner testified at the post-conviction hearing that prior to the offense of June 22, 1966, he had been arrested and charged with the offense of rape only once, that occurring in 1937. Petitioner testified that he served six years and eight months on the ten-year charge in the federal penitentiary at Leavenworth and then was released on conditional release. He violated the terms of his conditional release by, according to his testimony, being picked up on a charge of being drunk and was returned to Leavenworth to serve additional time on the original rape charge. Petitioner was again released on conditional release and returned to his home near Ft. Thompson, South Dakota. He violated the terms of his conditional release by again being charged with intoxication and was once more sent back to Leavenworth.[5]

The state did not attempt to rebut petitioner's testimony that he had only one prior rape conviction in July of 1966. Our analysis of petitioner's FBI record leads us to believe that his testimony in this respect is true. We turn, then, to the question whether a sentence which is imposed by a court under the erroneous impression that a defendant has four prior convictions on a similar offense must be vacated.

---

5. Although the FBI report indicates that petitioner may have committed more serious crimes than being drunk while on conditional release, the fact is that he had only one conviction for rape, that occurring in 1937. The sentencing court's erroneous reading of the FBI report illustrates the danger of relying on unverified and uninterpreted raw data concerning a defendant's prior criminal record. See A. Miller, The Assault on Privacy, pp. 32–38 (1971). Certainly a defendant and his attorney should be given a full and fair opportunity to explain the circumstances of defendant's prior criminal convictions.

In the case of Townsend v. Burke, 1948, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690, petitioner was sentenced to two indeterminate sentences not exceeding ten to twenty years upon his plea of guilty to two charges of burglary and two charges of robbery. Following the plea, the trial court recited a list of seven felonies that petitioner had allegedly committed. The court erroneously included in this list one charge on which petitioner was discharged by a magistrate and two charges on which petitioner had been adjudged not guilty. The Supreme Court reversed the denial of a writ of habeas corpus with the following comment:

> "It is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process."

We think that the instant case is similar to the situation that existed in the case of United States ex rel. Jackson v. Meyers, 3 Cir., 374 F.2d 707, where the trial court erroneously assumed that the defendant had a record of three robberies by strong arm. In fact, the first charge occurred when defendant was 15 years old and resulted in no disposition. The second charge had been discharged by a magistrate. The only criminal conviction on defendant's record was for strong-arm robbery for which defendant incurred a sentence of six to twenty-three months' imprisonment. In passing sentence the court stated: "On Arthur Jackson, **because** he had the longer record and had **several strong arm jobs,** I will sentence him * * * ". In granting a writ of habeas corpus, the Third Circuit Court of Appeals stated:

> "The second ground advanced, that the sentencing judge may not have given significant weight to these erroneous facts, is not only contradicted by the judge's own statement that the appellant was to receive his lengthy sentence '**because** he had the longer record and several strong armed jobs,' [Emphasis supplied.], but

in addition, is an assumption specifically forbidden by the Supreme Court in the Townsend case: 'We are not at liberty to assume that items given such emphasis by the sentencing court did not influence the sentence which the prisoner is now serving.'

\* \* \* \* \* \* \* \*

"This is not a case involving a 'mere error in resolving a question of fact on a plea of guilty.' With the facts of appellant's prior record undisputed and before the court, there was no justification for basing his sentence on a materially inaccurate foundation. Similarly, the price of correcting the injustice is insubstantial; the appellant can readily be resentenced." 374 F.2d 707, 711.

The post-conviction court found that the trial court did not rely on materially erroneous information and assumptions concerning petitioner's prior criminal record in imposing the 40-year sentence. Without belaboring the evidence, we feel that the statement of the sentencing court set forth above and the handwritten comment added to the official statement after the pronouncement of sentence are evidence that the court did rely upon the erroneous assumption that petitioner had four prior rape convictions in imposing sentence upon petitioner.

In the light of this record, then, " \* \* \* we deal here not with a sentence imposed in the informed discretion of a trial judge, but with a sentence founded at least in part upon misinformation of constitutional magnitude." United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).

We think it was a violation of petitioner's right to due process of law to have his sentence based upon materially inaccurate information concerning his prior criminal record.[6] We agree with the Third Circuit of Appeals that the price of correct-

---

6. We recognize, of course, the fact that petitioner could have been sentenced to life imprisonment. (SDCL 22-22-5 "Rape in the first degree is punishable by imprisonment in the state penitentiary not less than ten years \* \* \* ").

ing the injustice resulting from such a situation is insubstantial. Accordingly, we affirm the conviction and remand this case to the circuit court with directions that the petitioner be resentenced, with credit to be given petitioner on such new sentence for the time spent in confinement from and after July 16, 1966.

HANSON, P. J., and BIEGELMEIER and WINANS, JJ., concur.

DOYLE, J., not participating.