**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Vance Dwight DRIVER, Defendant and Appellant.**

No. 12818.

Supreme Court of South Dakota.

Argued Oct. 16, 1979.

Decided April 9, 1980.

Rehearing Denied May 15, 1980.

Judith A. Atkinson, Asst. Atty. Gen., Pierre, for plaintiff and respondent; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Steve Miller, Sioux Falls, for defendant and appellant.

DUNN, Justice (on reassignment).

This is an appeal by defendant of his conviction for third offense DWI, a felony. Defendant contends that his two prior DWI guilty pleas were not entered intelligently and voluntarily and that the convictions based thereupon were unconstitutional and inadmissible as evidence at trial on the third offense charge. We affirm.

On April 12, 1979, the defendant was found guilty of driving while under the influence of alcoholic beverages and was sentenced under the third offense penalty provision of SDCL 32–23–4. At the trial, certified copies of a 1975 and a 1977 judgment, based upon pleas of guilty to driving while under the influence of an alcoholic beverage, were admitted into evidence. The defendant stipulated that he was the person identified in both judgments, but he objected to their introduction. He now claims that he entered the prior pleas on advice of counsel and that he was not informed by the court of the exact nature of the charges against him, his right against self-incrimination, and his right to confront the witnesses against him. He recalls being informed of his right to a jury trial, but contends that neither plea was voluntarily and intelligently made. There is no transcript of either proceeding, and the court records and the judgments of conviction do

not indicate whether he was advised of his constitutional rights before intelligently and voluntarily entering pleas of guilty as mandated in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). *Boykin* was given application in South Dakota by *Nachtigall v. Erickson*, 85 S.D. 122, 128, 178 N.W.2d 198, 201 (1970), with this language:

> Nevertheless, it is now settled as a principle of the constitutional law that a plea of guilty cannot stand unless the record in some manner indicates a free and intelligent waiver of the three constitutional rights mentioned in *Boykin*—self-incrimination, confrontation and jury trial—and an understanding of the nature and the consequences of the plea. South Dakota judges can no longer assume that an accused represented by counsel has been informed of such matters and the judge must actively participate by "canvassing the matter with the accused."

*Boykin* and *Nachtigall* require that a waiver of these constitutional rights cannot be presumed from a silent record. In *Nachtigall*, the trial court conducted an evidentiary hearing to determine the voluntary nature of the plea. We held that procedure to be in accord with the practice suggested in *Halliday v. United States*, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), in post-conviction proceedings. This was followed by *Merrill v. State*, 87 S.D. 285, 206 N.W.2d 828 (1973), wherein we adopted the body of authority that *Boykin* does not require the arraignment record to show an express enumeration by the court, nor an express waiver by the defendant, of the constitutional rights mentioned in *Boykin* as a condition precedent to a voluntary and intelligent guilty plea. In *Crew v. Nelson*, 88 S.D. 162, 216 N.W.2d 565 (1974), we held that the *Boykin* standards apply to misdemeanor as well as felony cases and that in the absence of a stenographic record collateral evidence from the trial judge can be considered in determining whether the accused was aware of his constitutional rights and understood those rights at the time of the plea. See also, *Lodermeier v. State*, 273 N.W.2d 163 (S.D.1978); *State v. Holmes*, 270 N.W.2d 51 (S.D.1978).

The trial court supplemented the record regarding the previous guilty pleas with the testimony of Judge Keller, the magistrate who accepted both prior pleas, and with transcripts of proceedings in magistrate court in December of 1978, with Judge Keller presiding. The transcripts were prepared by Katherine Bakke, who took the proceedings at the request of defendant to show what rights were explained en masse to people pleading guilty to DWI. This was permissible in light of *Crew v. Nelson*, 88 S.D. 162, 216 N.W.2d 565 (1974), and *Merrill v. State*, 87 S.D. 285, 206 N.W.2d 828 (1973). Upon considering Judge Keller's deposition and the transcripts prepared by Miss Bakke, the trial court determined that the defendant had been advised of his *Boykin* rights when he entered his guilty pleas to DWI in 1975 and 1977 and upheld the third offense DWI charge.

A fair summary of the deposition of Judge Keller indicates that during the period in question he had advised defendants either en masse or individually that they were entitled to a jury trial; that they were entitled to confront the witnesses against them and cross-examine them; that they were entitled to bring in witnesses in their own behalf; that the state had to prove them guilty of the offenses charged; and that they need not testify or incriminate themselves in any way. Judge Keller also advised them that as a consequence of a plea of guilty they would waive all of these enumerated rights. He did not recall "spelling out the sentences" for each defendant.

The transcripts prepared by Miss Bakke constitute the only real record of the en masse proceedings in magistrate court and the attention given to individual defendants, and therefore certain portions of the transcripts are set out verbatim. The first transcript covers the general statements made to all defendants by the judge:

> Each person appearing in court is charged with a violation of the law. You are entitled to know and understand the charge against you. If you do not under-

stand the charge, inform me and I will explain further. You are presumed innocent until proven guilty.

1. You are entitled to a speedy and public trial * You are entitled to a trial by jury.

* If you request this, request it today. Do not wait for the preliminary hearing; as it takes at least 24 hours to get the facts together to have a case. It causes delays and unhappiness. When the States Attorney reads your name, please stand. The charge against you will be stated. At the preliminary hearing, you may waive your rights and enter a plea. A preliminary hearing is not a trial. Between now and the time of the trial, the purpose is for the state to call witnesses and to bring in witnesses to testify in your behalf. When the preliminary hearing is all over, it must be proved that an offense has been committed and probable cause that you did it. If they are not able to prove this, you will be dismissed. You will stand trial either to a court or a jury. If you waive your rights to a preliminary hearing, you should enter a plea of guilty or not guilty. You are entitled to a court or jury trial. You are not to incriminate yourself. You are entitled to a speedy and public trial. You may have witnesses sworn an oath and cross examined. You may compel witnesses to testify in your behalf. If your guilty plea admits you committed the offense, you charge and subject yourself to the penalties.

2. You are not required to testify against yourself or produce any evidence.

3. You may have witnesses in court sworn an oath and they may be cross examined.

4. You may use subpoena power to compel witnesses to testify in your behalf.

5. You may represent yourself, or have a lawyer represent you. If you are not able to afford a lawyer, one will be appointed for you at the expense of the state.

The second transcript covers the individual attention given to a defendant who is pleading guilty to DWI: *

Miss _____, you entered a plea of guilty to a charge of driving while under

* The transcript of a typical day in magistrate court included other arraignments besides the one set out verbatim in this opinion. Some of the arraignments were incomplete as they did not include rights that had been previously

the influence of alcoholic beverages. Miss _____, if you plead guilty, you're trying to admit something. Do you admit that at the time you were driving, you were under the influence of alcoholic beverages. True?

Yes.

Do you enter a plea of guilty?

Yes.

If you enter a plea of guilty, you give up the right to have witnesses in court. You may represent yourself, or you may have the assistance of Mr. Arneson. You give up the right to compel witnesses to come into testify in your behalf, and you give up the right to have these witnesses sworn an oath and cross examined. Do you understand this?

Yes.

Do you know what the maximum penalty could be?

No.

I could fine you as much as $1,000 or I could send you to the County Jail for as long as one year.

Was there a blood test taken?

No.

Was there a preliminary hearing in this case?

Yes.

Were you present?

Yes.

Was the arresting officer present?

Yes.

Did he testify as to whether he had you recite the alphabet?

Yes.

What is your recollection of the night you were arrested?

He made me do a lot of different things. Like what?

I had to touch my finger to my nose. Did you do this successfully?

I guess not.

What else did the officer have you do?

explained to a defendant in a "two-part" arraignment being used in some cases. The one set out above was a complete statement of rights to a defendant after she pleaded guilty to DWI and was appearing for sentence.

Stand on one leg for 30 seconds.

Did you do this successfully?

Well, he thought I didn't.

What time were you arrested?

At about 11:30.

Where were you prior to this time?

At a friends house.

Had you been drinking?

Yes.

How much did you drink?

We had a case of beer.

How many people were there?

Five of us.

Was it all gone before you left?

Yes.

I will accept your plea of guilty.

These proceedings were taken by Miss Bakke prior to the taking of Judge Keller's deposition, and they were apparently taken without Judge Keller's knowledge. The transcripts reflect a record of a typical day in magistrate court. The transcripts were introduced into evidence by the defendant and accepted by the court over objections by the state, and the trial court was justified in considering these transcripts along with other evidence.

There is ample evidence in the supplemental record to substantiate the trial court's finding that all of the rights in *Boykin*—self-incrimination, confrontation, jury trial and an understanding of the nature and the consequences of the plea— were explained to the defendant on the occasions of his pleas in 1975 and 1977 and that he understood those rights. We will not disturb that finding.

We are also impressed with the nature of the sentences meted out to defendant in 1975 and 1977. These were not the routine "30 days and $100 sentences with jail sentence suspended upon payment of fine." In both instances, the sentence, standing alone, has every indication of a negotiated plea or plea bargain in which the defendant and his attorney actively participated. Why else was a heavy jail sentence given and then suspended on condition that defendant try and rehabilitate himself? Why else would the trial court set out the installment meth-

od of paying the fine if it was not at the request of the defendant?

In plain language, this defendant not only knew of the possible consequences of his plea, he apparently knew exactly what the consequences and the penalty would be as a result of his plea. He now comes in some four or five years later, claiming that he was not advised of his rights and hoping that the state cannot prove otherwise.

The judgment of the trial court is affirmed.

WOLLMAN, C. J., and MORGAN, J., concur.

HENDERSON and FOSHEIM, JJ., dissent.

FOSHEIM, Justice (dissenting).

I am satisfied from the evidence that the trial court elicited a factual basis for the two prior pleas as required by *Spirit Track v. State*, 272 N.W.2d 803 (S.D.1978), and *State v. Doherty*, 261 N.W.2d 677 (S.D. 1978). At this point, however, I part company with the majority. A review of the record establishes that both prior pleas were not entered voluntarily and intelligently as required and were therefore inadmissible in support of the third-offense charge. Accordingly, I dissent.

Judge Keller testified that in 1975 he individually questioned each defendant with regard to understanding the *Boykin* rights. Because of the increased caseload, however, this procedure had been abandoned when the 1977 conviction was obtained. The judge said he then merely watched all the defendants while their rights were explained and if a defendant appeared not to understand what was being said, he would pursue the matter further with that individual before a plea was entered.

In *Crew v. Nelson*, 88 S.D. 162, 216 N.W.2d 565 (1974), we applied the *Boykin* standards to misdemeanor guilty pleas and sanctioned the *en masse* advisement of constitutional rights to groups assembled for arraignment in misdemeanor cases. This was in recognition of the need for efficiency

in high-volume courts. Accordingly, once those constitutional rights have been explained, whether individually or as a group, the court must, with both misdemeanor and felonies, examine each defendant individually to satisfy itself that the accused understands the nature of the charge and the consequences of a guilty plea and that there is a free and intelligent waiver of the three constitutional rights mentioned in *Boykin*.

Judge Keller specifically testified that his procedure at the time the 1977 conviction was obtained did not involve any individual canvassing of pleading defendants with respect to their understanding of the *Boykin* rights. The majority attempts to overcome this with transcripts of "a typical day in magistrate court" prepared from notes taken (at defendant's request) by a speedwriter in Judge Keller's court in December of 1978 and January of 1979. Such unofficial notes, however, do not refute the testimony of Judge Keller with regard to what he did by way of advising the accused of his constitutional rights *in 1975 and 1977*. What he did in 1978 or 1979 proves nothing. Nevertheless, since these transcripts form the basis for the majority opinion, they demand examination. The majority quotes a colloquy between the judge and one pleading defendant in 1978 and concludes therefrom that defendant Driver's prior pleas must have been characterized by similar dialogue. This conclusion is absolutely untenable in light of the entire record. The 1978 transcript reveals that on the day the specimen plea was accepted, only two of three pleading defendants were canvassed by the court; there is no evidence of *any* colloquy with the first. More disturbing is the 1979 transcript, which reveals that *none* of the three defendants entering guilty pleas on that occasion were questioned by the judge with regard to their understanding of the *Boykin* rights and the consequences of their pleas. The majority completely ignores this fact, notwithstanding our statement in *Nachtigall* that: "[I]t is now settled as a principle of the constitutional law that a plea of guilty cannot stand unless the record in some manner indicates a free and intelligent waiver of the three constitution-

al rights mentioned in *Boykin* [.]" 85 S.D. at 128, 178 N.W.2d at 201. While, as the majority opinion states, the trial court may quite properly consider collateral evidence where the record is silent, *Boykin* and *Nachtigall* require that such evidence affirmatively show that the pleas in question were entered voluntarily and intelligently. In the present case, there is an absolute lack of evidence of any kind that would demonstrate the validity of defendant's prior pleas.

The majority, in similar fashion, also dispenses with defendant's claim that he was not informed of the penal consequences of his pleas. It is clear from the record, however, that Judge Keller's general procedure at the time of both prior pleas did not involve any discussion of either the mandatory minimum or the possible maximum sentence that could be imposed. A guilty plea is not knowing and voluntary in the constitutional sense unless the defendant has a reasonable apprehension of the range of possible sentences. *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); *Lewellyn v. Wainwright*, 593 F.2d 15 (5th Cir. 1979).

In *Nachtigall*, supra, we quoted with approval (as did the Supreme Court in *Boykin*) from *Commonwealth v. Rundle*, 428 Pa. 102, 105, 237 A.2d 196, 197 (1968):

A majority of criminal convictions are obtained after a plea of guilty. If these convictions are to be insulated from attack, the trial court is best advised to conduct an on the record examination of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and *the permissible range of sentences.* [emphasis supplied]

85 S.D. at 127, 178 N.W.2d at 200. Thereafter, in *Crowe v. State*, 86 S.D. 264, 268, 194 N.W.2d 234, 236 (1972), we noted that the defendant had not been advised by the court of the minimum and maximum penalties for the crime of first-degree rape, and said:

In effect, *Boykin* held that Rule 11 of the Federal Rules of Criminal Procedure is applicable to the states as a matter of federal constitutional due process and that the record must show that the defendant had an understanding of the nature and consequences of his plea before a guilty plea can be sustained.

*Crowe*, however, was not decided under the *Boykin* rule because in *Nachtigall* we held that *Boykin* should be given prospective application only (to guilty pleas entered after June 2, 1969). We noted specifically that the plea in question in *Crowe* was entered in 1966, and we therein decided the issue under pre-*Boykin* rules. In *Crowe*, the Court concluded that "[n]otwithstanding the *inexplicable failure* of the trial court *to advise petitioner of the minimum and maximum penalties* for the charge against him and of his right against self-incrimination, we do not believe the petitioner has carried his burden of proof [under the totality of the circumstances rule applicable to pre-*Boykin* cases] of showing that his guilty plea was involuntary . . . ." 86 S.D. at 271, 194 N.W.2d at 237 (emphasis supplied). Thus, *Crowe* clearly indicates that if the *Boykin-Nachtigall* rule were applied, our conclusion with respect to the validity of the plea in that case would have been the opposite.

In the present case, Judge Keller, referring to his procedure in 1975 and 1977, testified: "I don't spell out the penalties." Rather, he simply informed pleading defendants that they would be subject to the penalties provided by law for the particular offense without stating the minimum or the maximum penalties. This procedure cannot be said to have satisfied constitutional requirements.* Moreover, of the six guilty pleas covered by the so-called 1978 and 1979 "transcripts", four reveal no advisement of available penalties.

The majority further concludes that defendant must have known of the penal consequences of his pleas because the convictions were obviously the products of plea-bargains. This implies that his attorney must have advised him of his rights and the penalties involved and that any deficiency on the part of the court was thereby corrected. Such a presumption flies in the face of *Nachtigall* which expressly holds that: "South Dakota judges can no longer assume that an accused represented by counsel has been informed of such matters and the judge must actively participate by 'canvassing the matter with the accused.'" 85 S.D. at 128, 178 N.W.2d at 201.

*Boykin* and *Nachtigall* require that the evidence affirmatively show that defendant's 1975 and 1977 convictions (not subsequent specimen pleas) were obtained in compliance with the Constitution. The record in this case, including the collateral evidence considered by the court, contains nothing to indicate that defendant's prior pleas were entered voluntarily and intelligently as required by law. In both instances, there is no evidence that defendant was advised of the minimum and maximum penalties for the offense. In addition, the 1977 plea was not preceded by any individual canvassing of the defendant by the court, except as to a factual basis for the plea. These deficiencies are not corrected by pre-

---

* A defendant need be advised of and understand only the *direct* penal ramifications of his plea as opposed to any collateral consequences. See, e. g., *Moore v. Hinton*, 513 F.2d 781 (5th Cir. 1975), holding that failure to inform a DWI defendant that a collateral consequence of his plea would be suspension of his driver's license by the Department of Public Safety did not render his plea invalid where the defendant was apprised of and understood the fine and jail sentence to be imposed. *See also: Armstrong v. Egeler*, 563 F.2d 796 (6th Cir. 1977); *United States v. Parrino*, 212 F.2d 919 (2nd Cir. 1954), *cert. denied*, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954).

SDCL 23A–7–4 follows Rule 11(c) of the Federal Rules of Criminal Procedure and specifically provides:

Before accepting a plea of guilty or nolo contendere a court must address the defendant personally in open court, subject to the exception stated in § 23A–7–5, and inform him of, and determine that he understands, the following:

(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law[.]

sumption nor by the fact that defendant was represented by counsel. Similarly, the conclusion of the trial judge that defendant understood and voluntarily waived his constitutional rights is inadequate. *State v. Nachtigall,* supra. The convictions based upon defendant's prior guilty pleas are thus void and inadmissible either to support guilt or enhance punishment. *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); *United States v. Pricepaul,* 540 F.2d 417 (9th Cir. 1976); *United States v. Megura,* 394 F.Supp. 246 (D.Conn.1976).

The majority opinion in effect modifies and weakens what we explicitly said in *Nachtigall* in applying *Boykin* in South Dakota. The full thrust of *Boykin,* however, is necessarily binding on us as a state, with or without *Nachtigall.* In my opinion, the majority attempts to depart from settled principles of constitutional law.

I am authorized to state that Justice HENDERSON joins in this dissent.

