John Kendal STACEY, Petitioner
and Appellant,

v.

STATE of South Dakota, Appellee.

No. 14346.

Supreme Court of South Dakota.

Argued Feb. 15, 1984.

Decided June 6, 1984.

Richard Braithwaite of Braithwaite Law Offices, Sioux Falls, for petitioner and appellant.

Richard Dale, Asst. Atty. Gen., Pierre, for appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

WOLLMAN, Justice.

Petitioner appeals from a judgment denying post-conviction relief.[1] We affirm.

On December 31, 1981, petitioner was at a party at a trailer house in Watertown, South Dakota. Petitioner and Larry Schoenbeck became involved in an altercation, whereupon someone pushed them outside the trailer house. While the two were engaged in a fight outside, petitioner stabbed Schoenbeck in the stomach.

Schoenbeck's version of the fight was that only he and petitioner were fighting at the time he was stabbed, that as soon as he saw the knife blade come out of his stomach he called out that he had been stabbed, prompting his step-brother, who was standing in the yard, to run over and wrestle with petitioner in an attempt to dislodge the knife from his hand. Although unsuccessful in this attempt, the step-brother succeeded in getting petitioner to release Schoenbeck. The step-brother corroborated this version of the incident at trial. Petitioner's version of the incident was that Schoenbeck and his step-brother were together beating him up prior to the stabbing, and that if he had not used his knife he would have sustained extensive injuries from the two of them.

Petitioner was charged with aggravated assault. A jury trial commenced on February 16, 1982. At the close of the first day of trial, petitioner's trial counsel advised petitioner that in the light of the evidence that had been presented petitioner really had little chance of an acquittal. Trial counsel asked petitioner to reconsider the plea bargain that the state's attorney had earlier offered, which was for a sentence not to exceed five years in the penitentiary. After confirming with the state's attorney that this plea bargain was still available if petitioner should decide to plead guilty, trial counsel advised petitioner accordingly. When trial counsel discussed the matter with petitioner the following morning, he learned that petitioner had made up his mind to "go with the plea bargain." Accordingly, later that morning petitioner changed his plea from not guilty to guilty. His trial counsel requested that petitioner not be imprisoned longer than five years. Pursuant to his guilty plea, petitioner was convicted of aggravated assault, SDCL 22–18–1.1(2) and 22–6–1(6), and sentenced to five years in the penitentiary. The maximum penalty for aggravated assault, a Class 4 felony, SDCL 22–18–1.1, is ten years imprisonment and a fine of ten thousand dollars. SDCL 22–6–1(6).

Petitioner contends that his plea of guilty was not given knowingly, voluntarily, and intelligently and that he was deprived of effective assistance of counsel.

■ A plea of guilty cannot stand unless the record in some manner indicates a free and intelligent waiver by the defendant of his constitutional right to confront and cross-examine witnesses against him, his constitutional right to trial by jury, and his constitutional privilege against self-incrimination. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Nachtigall v. Erickson,* 85 S.D. 122, 178 N.W.2d 198 (1970). The record must also indicate that the defendant had an understanding of the nature and consequences of his plea. *Nachtigall, supra; see also* SDCL 23A–7–4.

Petitioner was represented by counsel at what appears to have been a combined arraignment and preliminary hearing, which was held on January 18, 1982. At this hearing, petitioner acknowledged having been advised of his statutory and constitutional rights at a previous appearance. Petitioner had, in fact, signed a Preliminary Statement of Rights which listed the rights mentioned above. His trial attorney also stated that he believed he had gone over these rights with petitioner. The circuit court judge, however, again apprised petitioner of his rights, including those outlined in *Boykin v. Alabama, supra.*

1. 1983 S.D.Sess.Laws ch. 169, § 15 repealed SDCL ch. 23A–34, which provided for post-conviction proceedings.

■ When petitioner entered his guilty plea on February 17, 1982, he was before the same circuit court judge who had conducted the combined arraignment and preliminary hearing. The circuit court judge questioned petitioner extensively as to the voluntariness of his plea. Petitioner stated that his trial counsel had advised him of his statutory and constitutional rights, that he was completely satisfied with the representation given him by his trial counsel, and that the reason for his change of plea was "[t]hat I'm guilty." Before accepting the plea, the trial court did not, however, specifically advise petitioner of the right of confrontation and privilege against self-incrimination.

■ We have held that although a "[d]efendant must ordinarily be made to understand the nature of the plea by the trial court's 'canvassing the matter with [him].' ... It is sufficient, however, when the record affirmatively shows that defendant understandingly and voluntarily entered his plea." *Roseland v. State*, 334 N.W.2d 43, 45 (S.D.1983) (quoting *State v. Holmes*, 270 N.W.2d 51, 53 (S.D.1978)). Also, we have held that a criminal defendant need not be readvised of his rights immediately prior to his entering a plea of guilty, but that it is only necessary that the record show that he knew of his rights and the consequences of his guilty plea at the time the plea was entered. *Clark v. State*, 294 N.W.2d 916 (S.D.1980).

■ In *State v. Sutton*, 317 N.W.2d 414 (S.D.1982), we held that the requirement that the defendant be advised of his right to a trial by jury in the county in which the offense was alleged to have been committed was not satisfied when the defendant was advised of this right at a preliminary hearing before a lay magistrate, but was not again advised of this right by the circuit court judge prior to entering his guilty plea. We stated, "The trial court must be able to determine from its own record that the accused has made a free and intelligent waiver of his constitutional rights before a guilty plea is accepted." *Sutton, supra*, 317 N.W.2d at 416. In this case, the circuit

court judge, having conducted the combined arraignment and preliminary hearing as well as a day of jury trial on the case, was able to make this determination.

■ The interval of time from the advisement of the "Boykin Rights" until the entry of a guilty plea is only one factor in the totality of the circumstances to be considered in determining whether there was a knowing, intelligent, and voluntary entry of a guilty plea. *Singletary v. State*, 88 S.D. 655, 227 N.W.2d 424 (1975). The other elements include the defendant's age, prior criminal record and whether the defendant is represented by counsel. *Clark v. State, supra*. At the time petitioner entered his guilty plea he was twenty-six years old, had previously been convicted of a felony, and was represented by counsel. Most importantly, petitioner had just completed a full day of a jury trial, during which he had confronted and cross-examined witnesses as well as testified himself.

In *Singletary v. State, supra*, the defendant had participated in trial for five hours before entering a plea of guilty on the charges for which he was previously being tried. This court stated: "[Defendant] was not only explained his rights but participated in the very proceedings those rights guaranteed. The record conclusively shows that the petitioner was knowledgeable of his rights." 88 S.D. at 660, 227 N.W.2d at 426. After considering the totality of the circumstances in this case, we likewise conclude that the record conclusively shows that petitioner entered his plea knowingly, intelligently, and voluntarily.

■ Petitioner contends he was denied effective assistance of counsel as a result of various omissions and commissions of his trial counsel. Every defendant in a criminal prosecution is guaranteed the right to the assistance of counsel under Article VI, § 7 of the South Dakota Constitution and the Sixth Amendment to the United States Constitution. This constitutional right to assistance of counsel means adequate and effective assistance of coun-

sel. *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *High Elk v. State,* 344 N.W.2d 497 (S.D.1984).

Our review of a claim of ineffective assistance of counsel begins with the premise that: (1) an attorney is presumed competent, and (2) the party alleging incompetence has a heavy burden in establishing his allegation. *State v. McBride,* 296 N.W.2d 551 (S.D.1980). In addition, reversal of a conviction is not required unless the defendant demonstrates that he has suffered material prejudice. *Lufkins v. Solem,* 716 F.2d 532 (8th Cir.1983); *High Elk, supra.*

Our determination of whether counsel has provided effective assistance of counsel is based on whether counsel exercised "the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *High Elk, supra,* 344 N.W.2d at 500 (quoting *United States v. Easter,* 539 F.2d 663, 666 (8th Cir.1976)). Although it is not our function to second guess the decisions of experienced trial attorneys regarding matters of trial tactics, *State v. Walker,* 287 N.W.2d 705 (S.D.1980), we should not hesitate in reversing a conviction if the defendant was not afforded effective assistance of counsel. *Crowe v. State,* 86 S.D. 264, 194 N.W.2d 234 (1972).[2]

Petitioner contends that his trial counsel was ineffective because of his failure to secure the presence at trial of Jim Novy and Larry McMillan, who were present at the party on the night of the knifing incident. On the first day of trial, counsel moved for and was denied a continuance for the purpose of procuring the attendance of these witnesses to support petitioner's version of the knifing.

With regard to Novy, trial counsel had prepared a subpoena and delivered it to the sheriff for service, but the sheriff was unable to serve Novy at the Watertown address supplied by trial counsel. Petitioner's wife testified at the post-conviction relief hearing that she believed she had told trial counsel that Novy had moved from Watertown to Clear Lake, South Dakota. Trial counsel testified, however, that he did not recall receiving any information that Novy was in Clear Lake and that he did not believe anyone knew where Novy was at the time he was trying to subpoena him. When questioned about this matter at the post-conviction relief hearing, petitioner responded, "But [Novy] moved; where, I don't know." Under the circumstances, we cannot conclude that the failure to secure Novy's presence was a result of trial counsel's ineffectiveness.

At the time trial counsel was able to contact McMillan, who was residing in Colorado, trial counsel did not believe there was sufficient time to effect proper service on him. Trial counsel, however, made travel arrangements for McMillan to come to South Dakota to testify and mailed a subpoena to McMillan in Colorado. McMillan failed to appear for the trial.

Assuming arguendo that trial counsel could have and should have effected McMillan's attendance at trial by utilizing the procedures set forth in SDCL ch. 23A–14, petitioner must yet show that he

**2.** The Supreme Court of the United States has recently held that the proper standard for judging attorney performance in criminal cases is that of reasonably effective assistance, considering all of the circumstances. Under this test, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that but for counsel's unprofessional errors there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d —— (1984). *See also United States v. Cronic,* —— U.S. ——, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Although we reserve a detailed analysis of the *Strickland* and *Cronic* cases for a later day, our preliminary review of those decisions leads us to believe that there is no material difference between the standards for judging the effectiveness of assistance of counsel enunciated therein and the standards that we have set forth in our recent cases. *See, e.g., State v. Tchida,* 347 N.W.2d 338 (S.D.1984); *High Elk v. State, supra; State v. McBride, supra; Williams v. State,* 349 N.W.2d 58 (S.D.1984) If anything, our test of what constitutes prejudice warranting a reversal based upon an ineffectiveness of counsel claim may well be more stringent than that set out in *Strickland. See, e.g., High Elk v. State, supra.*

was prejudiced by counsel's failure to do so. To establish such prejudice, a petitioner must show that the proposed witness' testimony would have been beneficial. *See Nichol v. State*, 309 N.W.2d 468 (Iowa 1981); *State v. Pankey*, 208 Neb. 377, 303 N.W.2d 305 (1981).

Trial counsel came to the conclusion prior to petitioner's entry of the guilty plea that McMillan would not have been a valuable witness because he had not seen the fight from the time petitioner and Schoenbeck were pushed outside the trailer house and could not establish whether Schoenbeck was stabbed prior to or subsequent to the step-brother's involvement in the fight.[3] Also, subsequent to the jury trial, McMillan wrote a letter in which he set forth his knowledge of the knifing incident but did not disclose whether he had actually seen the stabbing.[4] Given the tenuous nature of McMillan's knowledge of the knifing incident, we conclude that petitioner has failed to show that he suffered material prejudice as a result of his trial counsel's failure to secure McMillan's attendance at trial.

■ Petitioner contends that his trial counsel rendered ineffective assistance by failing to impeach one Ross Nielsen, who had been called by petitioner to corroborate his version of the knifing incident. Nielsen's trial testimony, however, unexpectedly corroborated the State's version of the knifing incident. Given the nature of Nielsen's testimony, we cannot conclude that it was other than legitimate trial strategy for trial counsel to quickly terminate his direct examination of Nielsen.

■ Our review of the trial transcript leads us to the conclusion that trial counsel acted in petitioner's best interest in advising him to plead guilty so as to avoid the maximum punishment which could well have been imposed in the likely event that petitioner would have been found guilty by the jury. As we stated in *Crowe v. State, supra*, 86 S.D. at 273–74, 194 N.W.2d at 239:

We believe it appropriate to observe that there comes a time when it is defense counsel's duty to advise a defendant that in the light of the facts and circumstances surrounding the offense his plight is serious indeed and that there appears to be no escape from the harsh truth that he is in fact guilty of the offense charged. It would be ineffective assistance indeed for an attorney, either out of inexperience or out of a desire to commiserate with his client, to lull a defendant into believing that the case against him is less serious than it actually is or that the evidence of his guilt is slight when in fact it is overwhelming and irrefutable.

It was the overwhelming evidence of petitioner's guilt rather than, as petitioner maintains, his trial counsel's ineffectiveness, that induced and validated petitioner's decision to change his plea.

We have considered petitioner's other contentions and find them to be without merit. The judgment denying post-conviction relief is affirmed.

All the Justices concur.

---

**3.** Trial counsel testified that Novy also was unable to testify as to whether the knifing occurred prior to or subsequent to the step-brother's involvement in the fight.

**4.** It should be noted that McMillan has himself been convicted of a felony.