STATE of South Dakota, Plaintiff
and Appellee,

v.

Leonard KING, Defendant
and Appellant.

No. 15345.

Supreme Court of South Dakota.

Considered on Briefs Nov. 20, 1986.

Decided Feb. 11, 1987.

Rehearing Denied March 19, 1987.

Janine Kern, Asst. Atty. Gen., Mark V. Meierhenry, Atty. Gen. (on brief), Pierre, for plaintiff and appellee.

Michael Stonefield, Office of Public Defender, Rapid City, for defendant and appellant.

MORGAN, Justice.

By way of this appeal Leonard King (King) collaterally attacks two previous DWI convictions which contributed to his third offense DWI felony conviction under SDCL 32-23-4. We affirm.

On March 24, 1986, King entered a guilty plea to Part I of an information alleging that he had driven while under the influence of alcohol on January 11, 1986. A court trial was also held on that day relating to the Part II information which charged King with a violation of SDCL 32-23-4. The trial court found beyond a reasonable doubt that King was previously convicted of two counts of driving while intoxicated and further held that he was guilty as alleged in the Part II information. King appeals this conviction on the Part II information alleging that the guilty pleas entered in the prior two DWI's were not valid.

King raises three issues on appeal. Initially, King claims that he did not freely and intelligently waive his *Boykin* rights prior to his guilty pleas. Secondly, King claims that he did not fully understand the nature and consequences of his 1981 DWI guilty pleas since the court failed to advise him of the maximum penalty as required by SDCL 23A-7-4(1). Finally, King claims there was no factual basis for the 1981 DWI guilty pleas.

At the outset, we note that this appeal is actually a collateral attack on two earlier convictions. Appeals in this posture are

afforded a different review than those appeals taken directly from a conviction.

A defendant seeking to set aside a prior conviction obtained as a result of the entry of a guilty plea must initially make a prima facie showing that the guilty plea was *constitutionally infirm*; only when the defendant has satisfied this initial evidentiary requirement is the prosecution required to establish by a preponderance of the evidence that the guilty plea did not violate constitutional due process standards.

*People v. Wade*, 708 P.2d 1366, 1368 (Colo. 1985) (emphasis added). The trial court in a memorandum opinion to both counsel specifically stated its belief that King was afforded his constitutional protections before making the guilty pleas in 1981.

■ In the recent case of *Application of Garritsen*, 376 N.W.2d 575, 577 (S.D.1985), we noted: "A guilty plea is not valid unless the record in some manner indicates that the defendant freely and intelligently waived his constitutional right to confront and cross-examine witnesses against him, waived his constitutional right to trial by jury, and waived his constitutional privilege against self-incrimination." These rights were established in the case of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). King does not claim that he was not advised of these rights; rather, he claims that the record does not reflect that he freely and intelligently waived these rights.

While the record does not show that King expressly and in so many words waived his *Boykin* rights, King does not cite a single case supporting the proposition that such an express and unequivocal waiver is required to meet constitutional muster. State on the other hand cites several cases supporting the proposition that there is no requirement of an express waiver of the *Boykin* rights. *See Banks v. McGougan*, 717 F.2d 186 (5th Cir.1983); *Brown v. Jernigan*, 622 F.2d 914 (5th Cir. 1980) *cert. denied* 449 U.S. 958, 101 S.Ct. 368, 66 L.Ed.2d 224; *People v. Harris*, 61 N.Y.2d 9, 471 N.Y.S.2d 61, 459 N.E.2d 170 (1983); *People v. Wade*, 708 P.2d 1366 (Colo.1985). The transcripts of the arraignments preceding the 1981 guilty pleas clearly indicate that King was told of his right to "a speedy public trial before an impartial jury." Furthermore, the trial judge informed King:

At that jury trial you would be entitled to meet and to hear and to see and to cross-examine, that is, ask questions of, any of the witnesses that the State might call in order to prove its case....

At that trial and during all these proceedings you have an additional right that we refer to as the privilege against self-incrimination. That is your so-called Fifth Amendment right and what it means is that you cannot be forced or required in any way to furnish evidence or give any testimony against yourself.

However, of course, if you wanted to testify at that trial in your own behalf and in your own defense you could do so as a voluntary thing. But you could not be forced or required to do that.

The transcripts thus indicate that King knew that he had a right to jury trial and that he had certain other rights that attach during that jury trial. In addition, King was expressly advised of his right to counsel, which he waived.

In *Stacey v. State*, 349 N.W.2d 439 (S.D. 1984), we held that the defendant's age, prior criminal record, presence of counsel, and interval of time between the plea and the notice of the rights were important considerations in determining whether there was a knowing, intelligent, and voluntary plea. The record indicates that King's date of birth was November 10, 1951. We also note that King had one other DWI conviction, however, no other experience with the courts is indicated prior to the 1981 guilty pleas. King was not represented by counsel while entering either plea. The time interval between the advisement of his rights and his plea of guilty was very short. The advisement and the plea actually took place during the same arraignment. We hold that these circumstances are similar to those present-

ed in *Stacey,* and hold further that the record conclusively shows that King impliedly waived his *Boykin* rights by pleading guilty after those rights were carefully explained to him.

■ It is undisputed that the trial court did not advise King of the maximum sentence he could receive upon his plea of guilty. This is a violation of SDCL 23A–7–4 (Federal Rule of Criminal Procedure 11(c)) which states in pertinent part:

> Before accepting a plea of guilty or nolo contendere a court must advise the defendant personally in open court, ... and inform him of, and determine that he understands, the following:
>
> (1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law....

We note that this issue was raised in the case of *Application of Garritsen, supra,* but was not reached at that time. We also note that a number of other courts have been presented with this dilemma. *See United States v. Ammirato,* 670 F.2d 552 (5th Cir.1982); *United States v. Sisneros,* 599 F.2d 946 (10th Cir.1979); *Keel v. United States,* 585 F.2d 110 (5th Cir.1978); *Cheely v. United States,* 535 F.2d 934 (5th Cir.1976). In both *Sisneros* and *Keel,* the courts held that the defendant must show prejudice before relief can be granted.

Regardless of what principal of law is applied in direct appeals, we hold that when a collateral attack is made on a guilty plea for failure of the district court to literally comply with new Rule 11, the defendant must show prejudice in order to qualify for § 2255 relief. In the absence of a fundamental defect which inherently results in the miscarriage of justice, or an omission inconsistent with the demands of fair procedure, relief cannot be given in a collateral attack on a guilty plea conviction based on failure of Rule 11 compliance when the plea was taken.

*Keel,* 585 F.2d at 113. Likewise, we hold that prejudice must be shown before relief can be granted for a violation of our counterpart to the federal rule, SDCL 23A–7–4. King does not allege nor is there any evidence indicating that he would have changed his plea if he would have been notified of the maximum penalty.

■ King's third contention is that there was not sufficient factual basis to support the guilty pleas. After carefully reviewing the record, we do not find where this contention was raised in the trial court below. King's motion to vacate and dismiss the prior two DWI convictions alleged only that the "convictions are null, void, without legal effect, and constitutionally invalid." Furthermore, the trial court's letter to counsel denying this motion made no mention of a claim of lack of a factual basis to support the guilty pleas. Since the factual basis requirement arises from statute and not the constitution,[*] we will not allow King to raise this issue for the first time on appeal. *Mayrose v. Fendrich,* 347 N.W.2d 585 (S.D.1984); *Mortweet v. Eliason,* 335 N.W.2d 812 (S.D.1983); *Weaver v. Boortz,* 301 N.W.2d 673 (S.D.1981). "An issue may not be presented for a first time on appeal. [citations omitted] The appellant must affirmatively establish a record on appeal that shows the existence of error. He must show that the trial court was given an opportunity to correct the grievance he complains about on appeal." *Cooper v. Cooper,* 299 N.W.2d 798, 800 (S.D.1980).

Having disposed of King's contentions, we affirm the trial court.

WUEST, C.J., and FOSHEIM, Retired J., concur.

HENDERSON and SABERS, JJ., dissent.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

---

[*] *Wabasha v. Solem,* 694 F.2d 155 (8th Cir.1982).

HENDERSON, Justice (dissenting).

## RITUALISTIC, CATECHISTIC RECITATIONS? NOT REQUIRED.
## FREE AND VOLUNTARY PLEA THROUGH EXPLANATION OF RIGHTS? YES, REQUIRED.

Appellant's 1981 guilty pleas are used as a basis to enhance his punishment for a third DWI conviction in 1986. These were Tripp County convictions in the Sixth Judicial Circuit. Appellant, in the immediate proceedings below, filed a motion to vacate these two prior Tripp County DWI convictions and to totally dismiss the Part II Information filed by the State's Attorney's Office of Pennington County. However, the Seventh Judicial Circuit Court Judge denied the motion to vacate and thereafter held a factual trial on whether appellant was one in the same person as convicted in the Tripp County DWI convictions. The Seventh Judicial Circuit Judge held, beyond a reasonable doubt, that appellant was one in the same person. Appellant protected his record in filing a motion to strike and vacate these two prior criminal convictions based upon constitutional infirmities. Enhancement of his punishment is made possible by SDCL 32–23–4, which provides:

> If conviction for a violation of § 32–23–1 is for a third offense, or subsequent offense thereafter, the person is guilty of a Class 6 felony, and the court, in pronouncing sentence, shall unconditionally revoke the defendant's driving privileges for such period of time as may be determined by the court, but in no event less than one year from the date of his final discharge. If the person is convicted of driving without a license during that period, he shall be sentenced to the county jail for not less than ten days, which sentence may not be suspended.

We are not concerned with the validity of the 1986 conviction. We are concerned with the enhancement of punishment aspect of this appeal, as appellant advocates that the two DWI guilty pleas are constitutionally infirm. Appellant has a right to attack these two convictions, for he is being additionally punished for these two convictions. When *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), is read in conjunction with *Nachtigall v. Erickson*, 85 S.D. 122, 178 N.W.2d 198 (1970), it is clear that a successful collateral attack upon prior DWI guilty plea(s) can be avoided if the defendant, in making those pleas,

(1) waived his right against self-incrimination;

(2) waived his right to confrontation;

(3) waived his right to a jury trial; and

(4) was given an understanding of the nature and consequences of the plea.

We have held that compliance with these four mandates is required, and evidence of compliance must be reflected in the court's records; "[a] silent record is not sufficient." [1] *Nachtigall*, 85 S.D. at 128, 178 N.W.2d at 201; *In re Garritsen*, 376 N.W.2d 575, 577 (S.D.1985). *See, e.g., In re Smiley*, 66 Cal.2d 606, 427 P.2d 179, 58 Cal.Rptr. 579 (1967); *City of Monroe v. Coleman*, 304 So.2d 332 (La.1974).

Here, in my opinion, the record is deficient. Appellant was never advised of the maximum sentence he could receive upon a plea of guilty. Both the state law, SDCL 23A–7–4, and the Federal Rule of Criminal Procedure 11(c) require that this admonishment be given. Obviously, it has a purpose: to let a criminal defendant know how

---

1. When the defendant was arraigned on February 25, 1981, the circuit court judge in Tripp County called forward twelve individuals present whose date for arraignment had been set on misdemeanor charges and advised them of their rights en masse. This appellant's rights were not singularly explained to him, nor did he singularly waive his rights. Attached hereto, and by this reference made a part thereof, is the Transcript, at 6–7, of the sentencing of Mr. King, appellant. Note that it is the circuit court who is asking Mr. King if he, Mr. King, has any questions about his constitutional and statutory rights. This is the function of the court to explain them. And this author does not express that the constitutional and statutory rights were not explained with the crucial exception of a failure to advise this criminal defendant of the consequences of his plea. Another layer of error is atop the preceding error which I have noted, namely, that this criminal defendant did not, on the record, waive his individual rights. *See* first sentence, sixth full paragraph of the majority decision.

long he might serve behind bars if a guilty plea is entered. Absent accurate information regarding likely punishment resulting from a guilty plea, I fail to perceive how a defendant can make a "free and intelligent" waiver of his constitutional rights. *Cf. Garritsen*, 376 N.W.2d at 577; *Nachtigall*, 85 S.D. at 128, 178 N.W.2d at 201.[2] Therefore, under *Boykin, Nachtigall*, and *Garritsen*, Part II of the Information should be reversed.

Sentencing of appellant on the February 22, 1981 conviction was held on April 15, 1981. Thereupon, a discussion was held between the appellant and the trial court concerning appellant's decision to seek treatment for alcoholism at a state facility. Critical, however, again is a colloquy at the bench, wherein the court inquired of the appellant: "I expect that you are acquainted with what the penalty is for second offense DWI?" And thereupon, appellant replied, "Yes." Appellant was then sentenced to twenty days at hard labor in the Tripp County Jail. In all due respect to the distinguished and experienced trial judge, I simply cannot condone this type of sentencing procedure. True, the pleas were not coerced nor forced nor secured by threats or promises; however, the nub or gravamen of the wrongful criminal procedure here is that (1) appellant could not have voluntarily or intelligently entered a plea when the maximum and minimum penalties had not been explained to him for second offense DWI; and (2) that he had not been individually canvassed on his

rights with an express waiver of his rights. This author would not require ritualistic, catechistic recitations or incantation of legal rights. Substantively, however, constitutional and statutory rights must be explained and waived *on the record* or the plea process breaks down. *See* n. 2 and accompanying text, *supra*.

Finally, prejudice is here shown by time served in jail on the second offense, DWI, followed by prosecution for enhancement in this proceeding for which defendant was sentenced to the South Dakota State Penitentiary for two years. Where there is a constitutionally infirm conviction(s), these convictions cannot be used to enhance the sentence of a defendant under habitual offender statutes. *See State v. King*, 383 N.W.2d 854 (S.D.1986), and *In re Rogers*, 28 Cal.3d 429, 434, 619 P.2d 415, 417, 169 Cal.Rptr. 222, 224 (1980). The answer is that our state law requires it. If this author's position on prejudicial error is unsustainable, for the reason that we cannot peek into the window of the appellant's mind to determine his thoughts as to whether he would/would not enter a plea of guilty if he knew of the maximum penalty, I would steadfastly anchor myself to the settled law of this state as expressed in *Nachtigall*, namely: That this state not only adopted the principles of *Boykin*, but added an absolute requirement that the defendant have "an understanding of the nature and consequences of [his guilty] plea." *Nachtigall*, 85 S.D. at 128, 178

**2.** This point was most succinctly made in *Commonwealth v. Rundle*, 428 Pa. 102, 103–07, 237 A.2d 196, 197–98 (1968). There, the Supreme Court of Pennsylvania perceptively wrote:

A majority of criminal convictions are obtained after a plea of guilty. If these convictions are to be insulated from attack, the trial court is best advised to conduct an on the record examination of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences.

*Id.* (citations omitted; footnotes omitted). This passage was later quoted with approval in *Boykin*, 395 U.S. at 244, 89 S.Ct. at 1712, 23

L.Ed.2d at 280, and subsequently expressly adopted by the California Supreme Court in *In re Tahl*, 1 Cal.3d 122, 133, 460 P.2d 449, 457, 81 Cal.Rptr. 577, 585 (1969). One year later, in *Nachtigall*, we too quoted from the Pennsylvania Supreme Court's *Rundle* opinion and we stated:

[I]t is now settled as a principle of the constitutional law that a plea of guilty cannot stand unless the record in some manner indicates a free and intelligent waiver of the three constitutional rights mentioned in *Boykin*—self-incrimination, confrontation and jury trial— and an understanding of the nature and consequences of the plea.

*Nachtigall*, 85 S.D. at 128, 178 N.W.2d at 201 (quoting *Rundle*, 237 A.2d at 197).

N.W.2d at 201. The consequences of a guilty plea cannot be known unless the defendant is first informed by a trial judge of the possible range of penalties leviable upon entrance of his guilty plea.

## APPENDIX

### TRANSCRIPT OF ARRAIGNMENT AND SENTENCING—FEBRUARY 25, 1981

THE COURT: Mr. State's Attorney? You may proceed with the arraignment of Leonard Raymond King.

MR. CONKLIN: Thank you, Your Honor.

Let the record show that I have handed Mr. King a copy of an Information for DWI which bears date of October 9, 1980 and a second part of the Information alleging a former conviction also bearing date of October 9, 1980. Both of these Informations deal with an offense which allegedly occurred September 28, 1980.

(Mr. Conklin reads the Informations aloud in open Court.)

THE COURT: And we are on Clerk of Court's file number 80–252.

Mr. King, were you present when I advised you of your legal rights?

THE DEFENDANT: Yes.

THE COURT: Were you with a group of others that were all lined up here?

THE DEFENDANT: Yes.

THE COURT: First let me ask you if you would look at the Copy of the Information that the State has just given to you and tell me if your name is spelled correctly?

THE DEFENDANT: Yes.

THE COURT: Mr. King, do you have any questions that you would like to ask me about any of those constitutional and statutory rights that we talked about?

THE DEFENDANT: No.

THE COURT: Now, one of those rights that I talked about had to do with your right to have a lawyer. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, I note that you do not have a lawyer here with you now. Is it your desire to proceed in this case without a lawyer?

THE DEFENDANT: Yes.

THE COURT: All right. Let's talk about the Information that the State has filed and I want to call to your attention the fact that it is in two parts.

The second part alleges that you had a prior conviction in Tripp County, South Dakota for DWI on August 15 of 1979.

THE DEFENDANT: Yes.

THE COURT: Now, the allegation, or, the charge by the State that you had that prior conviction is important because it serves to inform the Court if it is true, that this would be a second offense for you, okay? I want you to keep that in mind.

SABERS, Justice (dissenting).

I dissent.

I would reverse on King's third contention because there was a clear violation of both SDCL §§ 23A–7–2 and 23A–7–14.

SDCL 23A–7–2 provides in part:

... The court may not enter a judgment unless it is satisfied that there is a factual basis for any plea except a plea of nolo contendere.

SDCL 23A–7–14 provides in full:

(Rule 11 (f)) *Factual basis required before acceptance of plea other than nolo contendere.* The court shall defer acceptance of any plea except a plea of nolo contendere until it is satisfied that there is a factual basis for the offense charged or to which the defendant pleads.

In *Gregory v. State*, 325 N.W.2d 297 (S.D.1982) we held that the factual basis required by these two sections must be established on the record. This can be done by questioning the defendant or by admitting transcripts of testimony, oral testimony, other sworn statements, or tangible evidence. *Id.* at 298–299. None of this was done here. In fact, the only attempt at establishing a factual basis resulted in inaccuracy and nonproof. The prosecutor

indicated King's blood alcohol content was 0.18%, but the arrest report shows no test was even taken. King's response, "All I know is I was over ten percent. But I really wasn't that drunk," raises a factual question instead of satisfying a factual basis.

I would not sidestep these clear statutory violations when this matter was within the issues before the trial court, especially when that claim was not raised by the State. In fact, a substantial part of the State's brief is devoted to its claim that the record supports a factual basis for the plea.

Accordingly, I would reverse.