**Douglas LOGAN, Petitioner and Appellant,**

v.

**Herman SOLEM, Respondent and Appellee.**

**No. 15409.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 17, 1987.

Decided May 27, 1987.

Richard Braithwaite, Sioux Falls, for petitioner and appellant.

Janine Kern, Asst. Atty. Gen., Pierre, for respondent and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

WUEST, Chief Justice.

This is an appeal from an order denying habeas corpus relief. We affirm.

Petitioner, Douglas Logan, was indicted for rape in the first degree and was later arraigned before Judge Gene Paul Kean. Judge Kean explained the right to trial by jury, the right to confront hostile witnesses and the privilege against self-incrimination. The judge also advised petitioner that a guilty plea would constitute waiver of these rights. Petitioner pled not guilty.

Petitioner was indicted in a second case for rape in the first degree, rape in the second degree, and sexual contact with a child under the age of sixteen. He was arraigned before Judge Richard D. Hurd. Judge Hurd explained the right to trial by jury, the right to confront hostile witnesses and the privilege against self-incrimination. The judge did not advise petitioner a guilty plea would constitute waiver of these rights. Petitioner pled not guilty to all three counts in the indictment.

Judge Hurd joined the two cases upon motion by the State. Pursuant to plea agreement, petitioner agreed to withdraw his plea of not guilty of sexual contact with a child under sixteen. In return, the State agreed to dismiss the first and second degree rape charges in both cases. At the continued arraignment, Judge Hurd told the petitioner:

> [THE COURT] ... Mr. Logan, before I proceed to ask you to plead anew to Count 3, I want to once again recall with you that at the time of your initial arraignment you were advised of various constitutional and statutory rights that you enjoy in regards to this matter....

The judge again reviewed the various rights with petitioner but in his summary did not mention self-incrimination. Judge Hurd continued:

> [THE COURT] ... Do you recall me advising you of those matters?
>
> DEFENDANT LOGEN: Yes, sir.
>
> THE COURT: Do you have any questions at all about those constitutional rights?
>
> DEFENDANT LOGEN: No.
>
> THE COURT: I want to make sure that you understand this also, sir. If you enter a plea of no contest to this charge you would be waiving many of those important rights because by pleading no contest the State no longer has the burden of proving your guilt beyond a reasonable doubt....

Judge Hurd then told petitioner there would be no trial and therefore no confrontation with hostile witnesses, but the judge omitted the privilege against self-incrimination when he was discussing waiver of petitioner's rights.

The petitioner entered a plea of nolo contendere to Count III. He was sentenced to ten years in the South Dakota State Peni-

tentiary.[1] He then filed a petition for habeas corpus and requested that his case be remanded for re-arraignment. Petitioner argued his plea of nolo contendere was invalid because the court did not advise him that the plea constituted waiver against self-incrimination or ascertain whether petitioner understood this. After hearing, Judge Robert C. Heege denied the writ for habeas corpus relief.

■ Petitioner asks this court to vacate the judgment and sentence, and to remand the case to the trial court for re-arraignment. Petitioner argues that his plea was invalid because Judge Hurd did not "advise him or ascertain whether he understood that a no contest plea would waive his privilege against self-incrimination." Petitioner does not assert that he was unaware of this privilege, nor does he argue that he was unaware of his waiving that right. In effect, petitioner argues that because an express waiver of this right does not occur *in the record*, his plea cannot be found to have been voluntarily and intelligently made or with an understanding of the nature and consequences of the plea.

A plea of guilty cannot stand unless the record in some manner indicates a free and intelligent waiver by the defendant of his constitutional right to confront and cross-examine witnesses against him, his constitutional right to trial by jury, and his constitutional privilege against self-incrimination.[2] *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. King*, 400 N.W.2d 878 (S.D.1987); *Application of Garritsen*, 376 N.W.2d 575 (S.D. 1985); *Stacey v. State*, 349 N.W.2d 439 (S.D.1984); *State v. Sutton*, 317 N.W.2d 414 (S.D.1982); *Nachtigall v. Erickson*, 85 S.D. 122, 178 N.W.2d 198 (S.D.1970).

In *Nachtigall*, this court held that the record must also show the accused had "an understanding of the nature and consequences of the plea." This requirement appeared in former Rule 11(c) of the Federal Rules of Criminal Procedure ("understanding of the nature *of the charge* and the consequences of the plea"). *See* 18 U.S.C.A., Rule 11 Advisory Notes (1986); *Compare Boykin*, 395 U.S. at 245, n. 7, 89 S.Ct. at 1713 n. 7; *Commonwealth v. Rundle*, 428 Pa. 102, 105–106, 237 A.2d 196, 197–198 (1968); *Commonwealth v. Myers*, 423 Pa. 1, 5 & n. 3, 222 A.2d 918, 921 & n. 3 (1966). Although Rule 11 is constitutionally based, full compliance with the statutory rule is not constitutionally mandated by *Boykin*. *See Halliday v. United States*, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969); *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

*Nachtigall* held this second requirement *is* necessary for a constitutionally valid plea. However, it must be made clear that application of the rule as a constitutional requirement is bound to the free and intelligent waiver analysis of *Boykin*. Waiver of *Boykin* rights is one of the "consequences" of a guilty or nolo plea. In effect, these two requirements overlap for purposes of constitutional analysis. Knowledge of other consequences, such as the maximum range of penalties, is also important to help a defendant evaluate the case against him and make an informed plea, but such knowledge is not necessary for constitutional due process under *Boykin*.[3]

Logic requires that a defendant know what his *Boykin* rights are and what they involve, for without knowledge he cannot understandingly waive those rights. The trial court must *normally* inform the de-

---

**1.** Evidence at the sentencing hearing indicated that on numerous occasions, during a period of some 15 years, petitioner had either been placed in psychiatric care, arrested, and/or prosecuted for rape and other sex crimes.

**2.** A nolo contendere plea must also be given voluntarily and intelligently. A nolo plea in criminal cases has essentially the same practical effect as a guilty plea, and this includes waiver of defendant's *Boykin* rights. *See North Car-*

olina v. Alford, 400 U.S. 25, 35–36, 91 S.Ct. 160, 166–167, 27 L.Ed.2d 162, 170–71 (1970).

**3.** Federal rule 11(c)(2) which requires the judge to inform the defendant of the maximum and minimum sentences he may receive, is one of the amendments to the former Rule 11 which required the court to inform the defendant of the "consequences of the plea."

fendant of these rights personally to insure that the record indicates a free and intelligent waiver of these rights. However, specific articulation of these rights by the trial judge is not an indispensible requisite for the record to establish a valid plea. It is sufficient when the record *in some manner* shows the defendant entered his plea understandingly and voluntarily. *Garritsen, supra; Stacey, supra. See Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970); *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970); *Wilkins v. Erickson,* 505 F.2d 761, 763 (9th Cir.1974).

The record shows petitioner was aware of his privilege against self-incrimination. Both Judge Kean and Judge Hurd specifically canvassed petitioner on the privilege against self-incrimination during the initial arraignments. Although Judge Hurd failed to again mention this specific right at the continued arraignment, a criminal defendant need not be readvised of his rights immediately prior to his entering a plea of guilty. It is only necessary that the record show that he knew of his rights and the consequences of his guilty plea at the time the plea was entered. *Garritsen, supra; Stacey, supra; Clark v. State,* 294 N.W.2d 916 (S.D.1980). We hold this rule applies for nolo pleadings.

In addition to the judges' canvassing these rights with the petitioner, the record also reveals that petitioner was thirty years of age, had received assistance of counsel, and once had even been tried on similar charges in a court of law.[4] Thus, the record conclusively shows petitioner understood that he had a right to a jury trial and those other rights, including the privilege against self-incrimination, which attach to a jury trial.

Petitioner does not claim that he was unaware of his *Boykin* rights. Nor does he assert that the trial court failed to advise him of these rights, on the record, in order to establish that he was aware of these rights. Rather, he claims that the record does not establish that he freely and intelligently *waived* one of those *Boykin* rights.

There is no requirement that the record show an express enumeration by the court nor an express waiver by the defendant of the three constitutional rights mentioned in *Boykin* as a condition precedent to a voluntary and intelligent guilty plea. *State v. Driver,* 290 N.W.2d 856 (S.D.1980); *Lodermeir v. State,* 273 N.W.2d 163 (S.D.1978); *Rust v. State,* 88 S.D. 265, 218 N.W.2d 482 (1974); *Crew v. Nelson,* 88 S.D. 162, 216 N.W.2d 565 (1974); *Merrill v. State,* 87 S.D. 285, 206 N.W.2d 828 (1973). *Boykin* is devoid of any language stating that valid waiver requires the defendant be specifically told each of those rights he is waiving and then expressly waive each right for the record.

The record shows that petitioner knew he was waiving these constitutional rights. Judge Kean informed petitioner that a guilty plea would waive the three constitutional rights mentioned in *Boykin.* During arraignment in the second case, Judge Hurd did not discuss waiver of these rights. At the continued arraignment, however, petitioner stated that he recalled those important constitutional rights mentioned at his earlier arraignment before Judge Hurd, and the judge told petitioner that a plea of nolo contendere would constitute waiver of many of those important rights. When Judge Hurd then began to address waiver of each specific right, he forgot to mention the privilege against self-incrimination. However, this oversight does not invalidate petitioner's plea. The record shows that petitioner voluntarily entered his plea with a full understanding of the rights he would be waiving. Nothing more is required for a constitutionally valid plea. In determining the validity of guilty pleas the "standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative causes of action open to the defendant." *Alford,* 400 U.S. at 30, 91 S.Ct. at 164.

---

**4.** The presence of these facts in the record is an important consideration in determining whether there was a knowing, intelligent, and voluntary plea. *King, supra; Stacey, supra; Roseland v. State,* 334 N.W.2d 43 (S.D.1983).

Petitioner cites SDCL 23A–7–4(4) and structures his main argument around the language in the statute. SDCL 23A–7–4 and subsection 4 are identical to Rule 11(c)(4) except for the language emphasized below:

Before accepting a plea of guilty or nolo contendere a court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(4) That if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial, *the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.* (Emphasis supplied).

SDCL 23A–7–4(4). *See* 18 U.S.C.A. Rule 11(c).

Failure to comply with the statutory provisions of SDCL 23A–7–4 does not amount to a *constitutional* defect. *See Goodroad v. Solem,* 406 N.W.2d 141 (S.D.1987); *King,* 400 N.W.2d at 880 (factual basis of a plea is not a constitutional consideration or proper on habeas appeal). However, we note that if the trial judge had canvassed the appellant under the statute this case would have never appeared before any other court.

Petitioner argues that transcripts from the prior arraignments should have never been allowed into evidence. These transcripts were not in the record at the start of the hearing, but were admitted by Judge Heege after motion by the State. Petitioner objected to the State introducing these transcripts and *any* other evidence because the State failed to file a return to the writ as required by SDCL 21–27–9.3. Petitioner argues this failure constituted default by the State and therefore barred admission of the State's evidence on the merits. He cites no authority for his argument.

The failure to make a formal return will not invalidate a hearing on the merits, particularly where substantial rights of the parties are not affected. *Application of*

*Habeck,* 75 S.D. 535, 69 N.W.2d 353 (1955). We do not condone the State's Attorney's failure to perform his duty as provided by SDCL 21–27–9.3. Nevertheless, Judge Heege was required to determine whether petitioner was imprisoned without authority of law. SDCL 21–27–14. This determination required hearing evidence on whether petitioner intelligently waived his *Boykin* rights. Therefore we find no error or abuse of discretion in the court examining the State's evidence on the merits.

Judgment affirmed.

MORGAN, J., concurs.

SABERS and MILLER, JJ., concur specially.

HENDERSON, J., dissents.

SABERS, Justice (concurring specially).

I write specially because I cannot concur with the author's statements on page seven that: "Failure to comply with the statutory provisions of SDCL 23A–7–4 does not amount to a constitutional defect" citing *Goodroad,* and "(factual basis of a plea is not a constitutional consideration or proper on habeas appeal)" citing *King.* I think the jury is still out on these matters and the author's authorities impliedly agree. *Goodroad* and *King* are questionable authority for these propositions.

Separately, the State was allowed to put in evidence not only after all parties rested their cases but even after the attorney for the petitioner had argued his case. This procedure gives the State an undue advantage and should not be encouraged.

MILLER, Justice (concurring specially).

I concur.

This case points out the important necessity for our trial courts to religiously utilize arraignment checklists. It is seldom that we are able to hold that failure to fully advise a defendant of his *Boykin/Nachtigall* rights does not result in a constitutionally infirm arraignment. Here, the collective circumstances of proceedings in multiple actions resulted in an adequate result, albeit far from perfect. The trial judges

here are competent and experienced, not to mention most judicially active. It is incumbent upon all judges, irrespective of the frequency of their arraignment tasks, to follow their arraignment checklists to assure that all salient rights are completely explained.

■ Secondly, as briefly alluded to by the majority, it was not error for the habeas corpus trial court to receive into evidence transcripts of the prior proceedings. Admittedly, the circumstances were unusual—namely, that the transcripts were received at a non-reported (for some unexplained reason) hearing, two weeks following the principal hearing on the petition. However, as a practical matter, it was not necessary for the court to receive these transcripts into evidence, since they were part of the court's own records of which it could properly take judicial notice. Although some of the delay was caused by the time it took for the court reporter to transcribe the notes, that is irrelevant. In many other circuits in this state it is the better practice to routinely transcribe and file all felony arraignments and sentencings so that the transcripts are immediately available for review in any subsequent inquiry.

Lastly, the state's attorney's failure to fulfill his duties under SDCL 21–27–9.3 is very serious. The record is unclear as to his reasons for not complying with the statute. Although his inaction could have resulted in some type of sanction upon him or his office, the trial court did not abuse its discretion in denying petitioner's motion.

HENDERSON, Justice (dissenting).

In keeping with the spirit of my dissent in *State v. King,* 400 N.W.2d 878, 881 (S.D.1987), as well as the authorities recited therein, I dissent.

This conviction should be reversed and set aside with the case being remanded to the trial court for re-arraignment. Thereby, we would protect the integrity of arraignments in this state and serve the constitutional rights of this petitioner. So far as I can determine, Judge Hurd advised petitioner of (1) his right to a jury trial and (2) his right of confrontation and cross-examination. Silent is the record concerning the loss of privilege against self-incrimination. *See* continued arraignment hearing on June 24, 1985, at 3–4. Petitioner's original arraignment was on May 6, 1985. *See* trial arraignment, at 1–8. At said time, petitioner was advised, in detail, of the nature of the offenses, the possible penalties, and his constitutional and statutory rights. However, pleas were entered at that time and no advice was tendered to petitioner that a *nolo contendere* plea would waive the right against self-incrimination.

Judge Kean's arraignment of March 18, 1985, cannot bootstrap the State's position even though an advisement was made against self-incrimination if petitioner pleaded guilty, for, thereat, petitioner was facing a *totally different charge.* In *Clark v. State,* 294 N.W.2d 916 (S.D.1980), we held, *inter alia,* that a record must show the defendant had knowledge of his rights and the consequences of the guilty plea at the time it is entered. Here, we have a record which does not meet the *Clark* criterion.

It is to be further noted that Judge Kean's advice pertained to the consequences of a *guilty plea* and not to the consequences of a *nolo contendere* plea. This Court assumes too much. Petitioner cannot be expected to know that the privilege against self-incrimination is waived by either a guilty plea or *nolo contendere* plea. Judge Kean did not refer to a *nolo contendere* plea. Judge Hurd did not refer to a *nolo contendere* plea at the May 6, 1985 arraignment. *Nolo contendere,* as a plea, was never advised by any judge until Judge Hurd mentioned the consequences of such a plea on June 24, 1985. Did petitioner understand that his *nolo contendere* plea would amount to a loss of his privilege against self-incrimination? Nothing in the record supports it. It is not in the arraignment before Judge Kean; it is not in the arraignment before Judge Hurd; it is not in the continued arraignment before Judge Hurd; and it is not in the habeas corpus

hearing/proceedings before Judge Heege. Let us delve further into the factual background of this case: (1) In the first arraignment before Judge Hurd, petitioner was not advised of the consequences of a possible plea; (2) in the arraignment before Judge Kean, he was advised only of the consequences of a guilty plea which pertained to a different charge; (3) only at the continued arraignment before Judge Hurd, was the petitioner advised of the consequences of a plea of *nolo contendere,* which advisement suffered dreadfully and constitutionally from an omission: loss of petitioner's privilege against self-incrimination. South Dakota Constitution, BILL OF RIGHTS, article VI, § 7, provides:

> In all criminal prosecutions the accused shall have the right to defend in person and by counsel; to demand the nature and cause of the accusation against him; to have a copy thereof; to meet the witnesses against him face to face; to have compulsory process served for obtaining witnesses in his behalf, and to a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.

This mirrors the Sixth Amendment of the United States Constitution. Our state constitution added the provision of furnishing a copy of the Information. These rights "are fundamental in character, and the failure of the court to protect them in a criminal prosecution is a denial of due process of law. U.S. Const. Fourteenth Amendment, § 1; S.D. Const. art. VI, § 2; *Powell v. State of Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527 [1932]." *State v. Jameson,* 71 S.D. 144, 146, 22 N.W.2d 731, 732 (1946). *See also* S.D. Const., BILL OF RIGHTS, art. VI, § 9, which provides: "No person shall be compelled in any criminal case to give evidence against himself or be twice put in jeopardy for the same offense."

In summation, petitioner's plea was involuntary and will not support the conviction and the sentence upon which it is based. The last sentence of appellant's reply brief is that petitioner did not know a *nolo contendere* plea would surrender the three rights set forth in my dissent in *State v. King* and the constitutional infirmities arising from a failure of a free and intelligent waiver of the three constitutional rights mentioned in *Boykin*—self-incrimination—confrontation—jury trial. We adopted these principles of *Boykin* in *Nachtigall v. Erickson,* 85 S.D. 122, 178 N.W.2d 198 (1970). And we additionally imposed that a defendant have an understanding of the nature and consequences of a plea of guilty. *See* commentary in *Clark,* 294 N.W.2d at 919.

For the majority opinion to characterize petitioner as having failed to assert that he was unaware of this privilege and not arguing that he was unaware of waiving that right (self-incrimination) does not fairly present the contentions of petitioner's brief.

When the Constitution was written, it represented a dramatic idea to perpetuate a free people's right to be governed by themselves under, prayerfully, an enduring document. We approach its 200th anniversary. I cannot join this opinion as I am convinced Logan has been denied his constitutional rights.