In the Matter of the ESTATE OF William J. WURSTER, Deceased.

No. 15421.

Supreme Court of South Dakota.

Considered on Briefs March 24, 1987.

Decided July 1, 1987.

Don E. Peterson of Tinan, Smith & Taylor, Mitchell, for appellant Patricia Wurster.

Gregory A. Protsch of Mumford, Protsch & Pardy, Howard, for Estate of William J. Wurster.

Robert W. Swank of Hanson, Stiles, Anderson & Swank, Mitchell, for Richard Wurster.

MILLER, Justice.

This appeal addresses the issue of standing to object to a final accounting in an estate probate. Patricia Wurster (Patricia) appeals the circuit court's ruling denying

her such standing. We reverse and remand.

## FACTS

William J. Wurster died testate December 18, 1984. His will named the following devisees and legatees:

Berniece Vlieger, daughter

Marvin Wurster, son

Carol Loon, daughter

Richard Wurster (Richard), son

The will named Marvin Wurster as executor.

Prior to these probate proceedings, Patricia had divorced Richard and was granted sole custody of the couple's only child. Richard consistently failed to pay court-ordered child support. In September of 1971, William J. Wurster obligated himself as surety to pay $150 in back child support owed by Richard, and to pay $25 per week so long as the child was a minor.

When Richard's father's will was in probate, Patricia filed a $17,255 itemized claim against the estate. This amount was alleged to equal the unpaid portion of Richard's child support obligations. The executor initially rejected this claim. The estate and Patricia finally settled the claim and Patricia released the estate from any further obligation as surety. The record is totally silent as to details of the compromise. Not even the final account reflects the amount of distribution to Patricia.

Meanwhile, a separate action was pending in which Patricia sued Richard for past and future child support. In pursuing this matter, Patricia and Richard stipulated that any sum Richard might inherit under the probate of his father's will would be placed in escrow until such time as Richard and Patricia agreed to distribute the funds, or a circuit court directed distribution of the funds. Later, Richard assigned to Patricia that portion of his share of his father's estate necessary to satisfy the remainder of her claim for child support after the settlement with the estate. This assignment was in consideration for her dismissing the action for past and future child support payments.[1]

All persons named in the decedent's will executed waivers of final accounting and notice of final accounting. Richard Wurster's waiver was dated January 22, 1986, and filed with the court on February 7, 1986. The waivers requested that the court enter a final decree of distribution of the estate without requiring the executor to submit a final accounting or give notice of a hearing on the final accounting. (Although the date on which Richard assigned his rights under the will to Patricia is unknown, both parties to this appeal agree the assignment occurred after Richard executed his waiver.)

Despite the final accounting waivers, the executor filed a six-page document with the court entitled "Final Account and Petition for Final Distribution" with the circuit court. This document was not a true final accounting however, as it did not detail the state of estate assets at the time of the accounting nor the transactions involving estate assets which took place during the probate period.

Patricia, as Richard's assignee, filed six written objections to this document: (1) That the $2,000 claimed as executor's fees was without itemization; (2) that the executor's fees claimed were in excess of those allowed by SDCL 30–25–7; (3) that the accounting failed to offset the executor fees by an indebtedness the executor owed to the estate; (4) that an offset against Richard's share of the estate by an alleged $1,200 indebtedness Richard owed to the estate was without proof of such indebtedness; (5) that the claim that funds held by Berniece Vlieger and decedent were held in joint tenancy was not proven; and (6) that it was improper for the executor to claim a certificate of deposit with a $2,000 face value as payment of executor fees even assuming $2,000 was an appropriate executor's fee, because interest accrued on the

1. Although there is no dispute regarding the existence of this agreement/assignment, there is no copy of it in the record. The record does contain transcribed statements by counsel made to the court at the final hearing which reveals the existence of the assignment.

certificate increased its value in excess of $2,000.

These objections were filed prior to the final accounting hearing. *See* SDCL 30–25–25. The circuit court nevertheless refused to consider the objections, ruling Richard's waiver of the final accounting was binding on Patricia as his assignee, and Patricia therefore had no standing to object to the final accounting. The circuit court then approved the "accounting" as filed by the executor. Patricia appeals the ruling denying her standing.

## DECISION

■ Under SDCL 30–25–25 "any person interested" in an estate may object to an accounting rendered by an executor or administrator.[2] Because Patricia was the assignee of the rights of a devisee/legatee named under the will she obviously was "interested" in the estate within the meaning of this statute. The executor's argument to the contrary is not well taken. According to the executor, "at the time of the hearing on the final account, the assignment between Richard Wurster and Patricia Wurster was not consummated and was not a perfected transaction between the parties." The executor apparently would have us conclude that Patricia enjoys no right to enforce the assignment and therefore is not "interested" in the estate. We believe the contrary is true. Richard's right to share in his father's estate existed prior to the assignment to Patricia. The transcript of the hearing reveals the parties completed a present assignment of a right then existing, and not merely an agreement to assign a right which might have arisen in the future.[3]

■ The executor next contends that even if Patricia was "interested" in the estate of William J. Wurster, the trial court correctly ruled Patricia lacked standing to contest the accounting. He reasons that because Richard waived his right to a final accounting prior to executing the assignment, he would have possessed no right to object to the final accounting at the time the assignment was made. Since he could assign no more rights to Patricia than he possessed, she had no right to object to the accounting. This rationale was adopted by the trial court.

Both sides on this appeal cite us authority which is only very arguably on point. We also have been unable to find authority directly applicable. Without straining to fit this case into a rule from the law of descent and distribution, assignments, or other area of the law not intended to apply to the facts before us, we hold that the waiver executed by Richard was not binding upon Patricia. To hold otherwise would pave the way for fraudulent waivers of accountings in the future, if not in the present case.

■ We do not question the general rule cited by the executor that an assignee of a distributee occupies the same position as his assignor occupied. 26A C.J.S. *Descent & Distribution* § 78 (1956). It is simply that application of this rule in a case such as this is not in the interest of justice. Ostensibly, waivers of administrative formalities are executed in order to expedite distribution of estate assets and to conserve estate resources. *See* 34 C.J.S. *Executors and Administrators* § 834 (1942). However, at the time Richard executed his waiver in this case he knew his ex-wife could make a claim to his interest in his father's estate, as he had for years neglected to pay his child support obligations. In such an instance, Richard had nothing to lose as devisee or legatee by waiving his right to an accounting, and could arguably execute such a waiver simply to defraud the assignee creditor. We therefore hold that the right to execute such a waiver is personal to the devisee or legatee, and will not transfer to the creditor who takes an

---

2. In fact, the "Order For and Notice of Final Account and Petition For Distribution" served upon Patricia specifically stated:
   "... any person interested in said estate may appear and file his objections to said Final Accounting and contest the same...."

3. We express no opinion in this case as to the enforceability of an assignment of a right which may arise in the future, or of an agreement to make such an assignment.

assignment of the debtor's interests under a will.

Because she was a person "interested" in the estate, Patricia had standing to object to the final accounting. The trial court should have awarded her her day in court, heard her objections, and ruled on their merit.

Finally, Patricia argues that although notice on final accountings may be waived, the actual accounting may not. *See* SDCL 30–25–17. Although that question is not properly before us, we do express our concern that trial courts remember their obligation to scrutinize probate accountings, regardless of the lack of objection, to protect the interests of all involved.

Reversed and remanded.

MORGAN and SABERS, JJ., concur.

HENDERSON, J., concurs in result.

WUEST, C.J., dissents.

WUEST, Chief Justice (dissenting).

I dissent. In my opinion the assignee stands in the same shoes as the assignor, and since Richard waived the final accounting and notice thereof prior to assigning his interest in the estate to Patricia, she doesn't have any standing to object. She cannot acquire any more rights than those assigned to her.

HENDERSON, Justice (concurring in result).

If a "question" is not properly before us, then it is axiomatic that we should not rule nor comment upon it. *See Lehr v. Department of Labor,* 391 N.W.2d 205, 207 (S.D. 1986); *Weber v. South Dakota Dep't of Labor,* 323 N.W.2d 117, 120 (S.D.1982); *Estate of Assmus,* 254 N.W.2d 159, 163 n. 8 (S.D.1977).

The settled record is the sole evidence of the trial court's proceedings. *Pearson v. Adams,* 279 N.W.2d 674 (S.D.1979). *See also Reed v. Heath,* 383 N.W.2d 873 (S.D. 1986). A trial court must be permitted to correct its error or a reviewing court will not review it on appeal. *State v. King,* 400 N.W.2d 878, 880 (S.D.1987) (citing *Cooper v. Cooper,* 299 N.W.2d 798, 800 (S.D.1980)). *Accord Stark v. Stark,* 79 S.D. 178, 109 N.W.2d 904 (1961). An issue may not be raised for the first time on appeal. *Sioux Valley Hosp. Ass'n v. Bryan,* 399 N.W.2d 352, 356 n. 2 (S.D.1987); *Romey v. Landers,* 392 N.W.2d 415, 420 (S.D.1986); *Weaver v. Boortz,* 301 N.W.2d 673 (S.D. 1981). The final paragraph of the majority opinion is gratuitous. A gratuitous remark, by a trial court, or by the reviewing court, is a remark or comment which is not called for by the circumstances or unwarranted. If this Court enters a new era, with new Justices on this Court, of commenting on "questions" that are "not properly before us," where will it lead us? And what have we done to our old standards of review which have been prevalent in this Court for decades?