# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3893

_____

| | | |
|---|---|---|
| Kroeplin Farms General Partnership, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of South Dakota. |
| | * | |
| Heartland Crop Insurance, Inc., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 15, 2005
Filed:  December 6, 2005

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

The district court[1] ruled that Kroeplin Farms General Partnership is entitled to the proceeds of a Multi-Peril Crop Insurance (MPCI) policy.  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1] The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

## I.

On September 30, 2001, Bryan Robert Kroeplin received an MPCI policy for his 2002 winter-wheat crop from Heartland Crop Insurance, a private insurer reinsured by the Federal Crop Insurance Corporation (FCIC). The policy is a standard form, found in 7 C.F.R. § 457.8.

In December, Bryan, his son Kody and his brother Doug formed Kroeplin Farms, a general partnership. Two months later, on February 11, 2002, Bryan withdrew from the partnership and executed a "Transfer of Right to Indemnity" on a form provided by Heartland's agent.[2] According to the form, Bryan assigned his right to indemnity for his 2002 winter-wheat crop to Kroeplin Farms, indicating any check should be payable to the partnership. On March 25, 2002, Bryan executed a bill of sale transferring to Kroeplin Farms his interests in both the crops and the insurance.

The United States sued Bryan and his wife on June 19, 2002, alleging a false claim in underreporting their 1999 sunflower crop. The parties entered a settlement agreement on July 8, 2002. Bryan and his wife did not admit guilt but agreed to a fine and voluntary debarment and disqualification from all FCIC programs, including MPCI policies "on all crops in which they have an interest for the 2002 crop year." The settlement agreement stated that Bryan and his wife understood that their names would appear on the FCIC debarment/disqualification list for the 2002 crop year only.

---

[2]The form apparently was not submitted to, and approved by, Heartland until May 2002. On the form, however, February 11, 2002, was filled in as the effective date of transfer. Also, on March 25, 2002, Bryan and the partnership executed a bill of sale transferring Bryan's interests in both the crops and the insurance policy. Although this court will treat February 11 as the effective date of transfer, whether the transfer actually occurred in February, March or May is immaterial.

During this time, Kroeplin Farms filed a claim of loss with Heartland. On September 16, 2002, Heartland calculated the total loss as $205,680 and prepared a check for $185,364 (after subtracting the premium and fee). However, after reviewing the settlement agreement, Heartland determined that the policy was void and refused to send the check to Kroeplin Farms.

The district court agreed that the contract was void and "never existed," but held that Heartland could not raise this defense because it had been notified of, and accepted, the assignment before the settlement agreement. The court invoked Restatement (Second) of Contracts § 336(2): "The right of an assignee is subject to any defense or claim of the obligor which accrues before the obligor receives notification of the assignment, but not to defenses or claims which accrue thereafter except as stated in this Section or as provided by statute." The district court granted summary judgment for Kroeplin Farms, ordering Heartland to pay the indemnity.

## II.

A grant of summary judgment is reviewed de novo, using the same standard as applied by the district court. *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 728 (8th Cir. 2002). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmovant, shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. **Fed. R. Civ. P. 56(c)**. The proper construction of an insurance contract is an issue of law, and thus well suited for summary judgment. *See **Modern Equip. Co. v. Cont'l W. Ins. Co.***, 355 F.3d 1125, 1128 (8th Cir. 2004).

The MPCI policy defines "void" as: "When the policy is considered not to have existed for a crop year as a result of concealment, fraud, or misrepresentation (see section 27)." Section 27 of the policy reads:

(a) If you have falsely or fraudulently concealed the fact that you are ineligible to receive benefits under the [Federal Crop Insurance] Act or if you or anyone assisting you has intentionally concealed or misrepresented any material fact relating to this policy:
    (1) This policy will be voided;
    . . . .

Section 27 thus establishes two types of fraud that void a policy. As for the first "if" clause, when Bryan applied for and received his winter-wheat policy in September 2001, he did not conceal any facts about his eligibility under the Federal Crop Insurance Act (FCIA). As to the second clause, the government's concealment and misrepresentation charges do not relate in any way to Bryan's winter-wheat-crop policy – the charges involve only his 1999 sunflower crop. Therefore, his policy is not void under section 27, the linchpin of the definition of "void" in the policy.

The settlement agreement, however, does address Bryan's policy. Part III, clause 6 of the settlement agreement states:

Kroeplins voluntarily agree to a debarment and disqualification from all FCIC programs including obtaining federally reinsured multi-peril crop insurance policies on their behalf or on all crops in which they have an interest for the 2002 crop year. Kroeplins understand their names will appear on the FCIC debarment/disqualification list for the 2002 crop year only, effective from September 30, 2001, to September 30, 2002.

Although Bryan argues that his ineligibility did not begin until July 8, 2002, citing 7 C.F.R. § 400.681(a)(3), he agreed to debarment and disqualification starting September 30, 2001. Bryan is subject to the settlement agreement he voluntarily consented to, even if it is broader than the regulations authorize.

-4-

His settlement agreement thus waives any contention that his ineligibility begins only after July 8. Under South Dakota law, a waiver occurs when "[o]ne in possession of any right, whether conferred by law or by contract, and with full knowledge of the material facts, does or forbears the doing of something inconsistent with the exercise of the right." *Flugge v. Flugge*, 2004 SD 76, ¶ 18, 681 N.W.2d 837, 842, *quoting* *Action Mech., Inc. v. Deadwood Historic Pres. Comm'n*, 2002 SD 121, ¶ 18, 652 N.W.2d 742, 749. By agreeing that his name appear on the debarment/disqualification list effective September 30, 2001, Bryan waived any right he might have to a different debarment/disqualification date under 7 C.F.R. § 400.681.

Bryan's policy – if held by him at all relevant times – would be unenforceable because of his voluntary debarment and disqualification. Heartland argues that the policy is void from the beginning, and thus cannot be assigned, relying on the advice of the federal agency that administers the FCIA.

The binding authority on the policy is not ad hoc advice, but the law and regulations on the FCIA. *See* *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947). By the FCIA law, in construing FCIA contracts, state law applies with two exceptions: 1) when the contract provides state law does not apply; or 2) when state law conflicts with FCIC contract provisions. *See* **7 U.S.C. § 1506(l)**; *see also* *Alliance Ins. Co. v. Wilson*, 384 F.3d 547, 551 (8th Cir. 2004). The policy at issue only excludes state law to the extent that it conflicts with the policy provisions. *See* **7 C.F.R. § 457.8** (section 31 of the Common Crop Insurance Policy). In this case there is no conflict.

Under South Dakota law, "a void contract is invalid or unlawful from its inception. It is a 'mere nullity, and incapable of confirmation or ratification.'" *Nature's 10 Jewelers v. Gunderson*, 2002 SD 80, ¶ 12, 648 N.W.2d 804, 807, *quoting* **Black's Law Dictionary** 1573 (6th ed. 1990). Heartland relies on *Nature's 10 Jewelers* for the proposition that the policy here is a void contract that is a nullity from

the beginning. Heartland omits that *Nature's 10 Jewelers* recognizes voidable contracts. A voidable contract is valid unless "legally voided at the option of one of the parties." ***Id***.; *see also* **Restatement (Second) of Contracts § 7 (1981)**.

The policy here is a voidable contract to the extent that the government had the option to void it by disqualifying Bryan in accordance with law. By the governing regulations, a policy voided as a result of ineligibility is not considered a nullity from the beginning. 7 C.F.R. § 400.681(b) states that a policy becomes void "*once* the person has been determined to be ineligible." (emphasis added). Under Section 400.681(b), the policy here is not a void contract because the winter-wheat policy was not unlawful from its inception – there was no defect at the time of formation. Instead a policy is void once the person becomes ineligible.

The issue becomes whether the MPCI policy was properly assigned in this case. When a contract right is assigned, the assignor's right to performance by the obligor is extinguished and the assignee acquires that right. *See* **Restatement (Second) of Contracts § 317(1)**. "[T]he assignee stands in the same shoes as the assignor." **In re Estate of Wurster**, 409 N.W.2d 363, 366 (S.D. 1987) (Wuest, C.J., dissenting); *see also* ***Lee v. Sioux Falls Motor Co.***, 274 N.W. 614, 616 (S.D. 1937). An assignee can obtain no greater rights than the assignor had at the time of assignment. *See* ***Kobbeman v. Oleson***, 1998 SD 20, ¶ 8, 574 N.W.2d 633, 636; ***Heinzman v. Howard***, 348 N.W.2d 147, 148 (S.D. 1984), *citing* **77 Am. Jur. 2d *Vendor and Purchaser* § 389 (1975)**; ***Tripp v. Sieler***, 161 N.W. 337, 340 (S.D. 1917). Thus, an assignee's right is subject to a defense that the contract was voidable or unenforceable before the assignment. *See* **Restatement (Second) of Contracts § 336(1)**; *see also* ***Gilbert v. United Nat'l Bank***, 436 N.W.2d 23, 25–26 (S.D. 1989), *citing* **6 Am. Jur. 2d *Assignments* § 102 (1963)**. As emphasized by the district court, however, an assignee is not subject to any defense by the obligor against the assignor that arises after notice of the assignment. *See* **Restatement (Second) of Contracts § 336(2)**; *see also* ***Gilbert***, 436 N.W.2d at 26 (explaining assignee is subject to defenses that could have

been asserted at time of assignment). Where there is an unconditional assignment, an assignee can recover on an assigned right against the obligor, but the assignor cannot. *See* **Restatement (Second) of Contracts § 331 cmt. a**; *see also Grady v. Commers Interiors, Inc.*, 268 N.W.2d 823, 825 (S.D. 1978) (holding assignee had right to sue in own name); *Valmont Credit Corp. v. McIlravy*, 344 N.W.2d 691 (S.D. 1984) (holding assignee of purchase security agreement was holder in due course and could bring action against obligor).

Bryan executed a transfer of right to indemnity effective February 11, 2002. The transfer was made on a form provided by Heartland, which was mailed back to, and approved by, Heartland. This assigned to Kroeplin Farms Bryan's right to indemnity. *See* **Restatement (Second) of Contracts § 317(2)**; *see also Brown v. Powell*, 2002 SD 75, ¶ 26, 648 N.W.2d 329, 335 (Gilbertson, J., dissenting); *Bank of Toronto v. Lengkeek*, 436 N.W.2d 271, 275 (S.D. 1989). The transfer of indemnity was an unconditional assignment, giving Kroeplin Farms the right to recover against Heartland. Any defense Heartland had against Bryan did not arise until July 8, 2002 – the date Bryan agreed to disqualification and debarment – because the original policy was entered into validly. Heartland's defense against Bryan arose after it had notice of the assignment, and, therefore, it cannot now assert that defense against Kroeplin Farms.

Heartland repeatedly argues that this conclusion permits fraudulent schemes. First, an assignment itself may be voidable for fraud. *See* **Restatement (Second) of Contracts §§ 331 cmt. a**, **336**; *cf. Delany v. Delany*, 402 N.W.2d 701, 706 n.1 (S.D. 1987), *citing Meske v. Wenzel*, 20 N.W.2d 654, 657 (Wis. 1945) (explaining Wisconsin court holding that assignee who was party to fraud could not affirmatively assert right against assignor). There is no evidence that Kroeplin Farms engaged in fraud against the government that would void the assignment. Instead, the only evidence is that Bryan sold his winter-wheat field and transferred his right to

indemnity to Kroeplin Farms, so that if he were to enter into any agreement with the government, it would not affect the farm.

Second, the standard policy at issue here provides that a transfer of coverage is not effective "until approved by us [the insurance company providing insurance] in writing." *See* **7 C.F.R. 457.8** (section 28 of the Common Crop Insurance Policy). This right of approval permits insurance companies to determine the reality of the transfer requested and to prevent fraudulent schemes.

## III.

The MPCI policy here is not void as a nullity but is voidable to the extent authorized by the law and regulations of the FCIA. Heartland knew of, and accepted, the transfer of indemnity to Kroeplin Farms before the July 8, 2002 settlement agreement. Moreover, there is no evidence of a fraudulent assignment. Heartland is liable to Kroeplin Farms because its claim against Bryan did not arise until after it had accepted the assignment.

Accordingly, the judgment of the district court is affirmed.

_____