# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3330

_____

| | | |
|---|---|---|
| Marnita Goddard, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from United States |
| | * | District Court for the |
| South Dakota Public Assurance | * | District of South Dakota. |
| Alliance, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 14, 2012
Filed: August 3, 2012

_____

Before MURPHY, BRIGHT, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Marnita Goddard was injured while riding on a trolley operated by the city of Deadwood, South Dakota. Invoking diversity jurisdiction, Goddard sued the city for negligence and the South Dakota Public Assurance Alliance (SDPAA) for uninsured motorist coverage. After Goddard settled with the city, the district court[1] granted summary judgment in favor of SDPAA, concluding that Goddard was not covered

_____

[1] The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota, adopting the report and recommendation of the Honorable Veronica L. Duffy, United States Magistrate Judge for the District of South Dakota.

under the uninsured motorist provision in the city's agreement with SDPAA. Goddard appeals, and we affirm.

The city of Deadwood operates a daily trolley which makes 37 stops on its route around the city, from early morning until at least midnight. The trolley is powered by its own engine and runs without cables. Goddard, a resident of Nevada, paid the $1.00 fee to ride the trolley on an evening in August 2007. Goddard and other passengers were already seated inside the trolley when the driver came aboard at approximately 11:00 p.m. The record indicates that sometime after starting the route the trolley was driven off a ledge and onto a football field below. Goddard and other passengers claimed that they sustained injuries as a result of the accident. A government liability pool known as SDPAA provides liability coverage for the city's trolley operation under a Governmental Liability Coverage Agreement.

Goddard sued the city, alleging that the trolley driver had been negligent in driving the vehicle on the evening she was injured. During discovery the trolley driver testified that he had gone over the ledge after seeing a "light in [his] windshield" and swerving to "avoid a head-on collision." After that testimony Goddard added SDPAA as a named defendant, alleging a right to recover under the uninsured and/or underinsured motorist provision in its agreement with the city. Goddard contended that since a phantom motorist had caused the accident, his vehicle qualified as an uninsured automobile under the agreement and she could recover under the uninsured motorist provision.

The agreement provides in section III(R) that uninsured motorist coverage is available for amounts

> that a <u>member</u> is legally entitled to recover as damages from the owner or operator of an uninsured automobile . . . . The damages must result from injury sustained by the <u>member</u> and caused by an occurrence resulting from the ownership, maintenance or use of, or when struck by,

an uninsured automobile . . . . Use includes operating the vehicle as well as getting into or out of, or being in or on the vehicle.

(some emphasis omitted).

Goddard argued that she was eligible for uninsured motorist coverage under the agreement between the city and SDPAA because she is a "member" under section II. That section defines member in four subparts. Section II(A)–(C) designate specific categories of persons or entities who are members, all of whom have direct ties to the city. Specific examples given for members are the city of Deadwood, any of its employees acting within the scope of employment, and any organization which the city acquires or forms and over which it maintains ownership or majority ownership interest. Section II(D) is more general. That section states that a member also includes "anyone else while using, with [the city's] permission, any automobile owned, hired or borrowed by [the city] . . . ." (emphasis omitted). Trolley passengers are not mentioned.

Defendant SDPAA moved for summary judgment, arguing that Goddard was not entitled to coverage under the uninsured motorist provision because the accident had been caused solely by the trolley driver's negligence, that she was not a member within the meaning of its agreement with the city, and that any recovery under the agreement would be duplicative. Goddard also moved for partial summary judgment, seeking a determination that there were "no issues regarding the actions of Plaintiff . . . [and] no genuine issue about whether the Plaintiff was injured." The district court referred the cross motions to a magistrate judge. While the motions were pending, the city and Goddard settled her negligence claim and the city was dismissed from the

case with prejudice. The record does not indicate the basis of the settlement or the source of any payment to Goddard.[2]

After the city was dismissed from the case, the magistrate judge recommended granting SDPAA's motion for summary judgment and denying Goddard's motion as moot. The magistrate judge concluded that Goddard was not entitled to coverage under the uninsured motorist provision because she was not a covered member. The magistrate judge also noted that "the court has insufficient information to determine whether any prospective recovery from SDPAA" would be duplicative. The district court adopted the report and recommendation, concluding that the term member was "clear and unambiguous" and only referred to those performing a public service or acting in the same capacity as a city employee. Goddard was not eligible for uninsured motorist coverage and therefore any potential issue of duplicative recovery was moot. Goddard appeals, arguing only that she is a member under the agreement.

We review de novo the district court's grant of summary judgment to SDPAA. Kroeplin Farms Gen. P'ship v. Heartland Crop Ins., Inc., 430 F.3d 906, 909 (8th Cir. 2005). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmovant, shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Id. Our interpretation of the SDPAA agreement is governed by South Dakota law. See O'Daniel v. NAU Country Ins. Co., 427 F.3d 1058, 1060 (8th Cir. 2005).

Goddard argues that the SDPAA agreement is clear and unambiguous and that she is a member under it. She points to section II(D) which defines member to include "anyone else while using, with [the city's] permission, any automobile owned, hired

_____

[2] Section III(J) of the city's agreement with SDPAA requires the latter to pay "those amounts that a member becomes legally obligated to pay as damages because of injury arising out of [the city's] covered operations . . . ." (emphasis omitted). It is undisputed that the trolley's operation is covered and that the driver would have been a member.

or borrowed by [the city] . . . ." (emphasis omitted).  She points out that she was using the trolley as a paying passenger on the night she was injured.  SDPAA argues that Goddard cannot be considered a member because her interpretation of section II(D) would render other provisions meaningless and would contravene the contracting parties' understanding of the scope of coverage.

Whether Goddard is a member is a question of contract interpretation. Under South Dakota law, an insurance policy's unambiguous "terms are to be construed according to their plain and ordinary meaning."  Am. Family Mut. Ins. Co. v. Elliot, 523 N.W.2d 100, 102 (S.D. 1994).  Whether a term is ambiguous is determined in light of "the policy as a whole and the plain meaning and effect of its words."  Nat'l Sun Indus. v. S.D. Farm Bureau Ins. Co., 596 N.W.2d 45, 48 (S.D. 1999) (citation omitted).  Insurance policies should be given a "reasonable interpretation, in the context of the risks insured, without stretching terminology."  Opperman v. Heritage Mut. Ins. Co., 566 N.W.2d 487, 490 (S.D. 1997).  If a term "is fairly susceptible to two constructions," Am. Family Mut. Ins. Grp. v. Kostaneski, 688 N.W.2d 410, 413 (S.D. 2004) (citation omitted), it is ambiguous and we must adopt "the interpretation most favorable to the insured." Roden v. Gen. Cas. Co. of Wisc., 671 N.W.2d 622, 625 (S.D. 2003) (citation omitted).

The term member must be read in the context of the agreement as a whole.  See Nat'l Sun Indus., 596 N.W.2d at 48.  The relevant sections of the agreement include section I which provides definitions for the agreement's terms, section II which outlines "who receives coverages" under it by defining a "member," and section III which provides the agreement's "coverages."  The coverages in section III of the agreement generally refer to obligations that SDPAA has toward members under the agreement, but that section also references payments that might be made to nonmembers—such as for liability under section III(J) or for medical expenses under section III(K).

Section II defines "member" in four subparts (A)–(D). Section II(A)–(C) define member to include the city of Deadwood and certain individuals and entities acting on its behalf, such as an elected or appointed official while acting on the city's behalf or an organization that the city has acquired or formed and over which it maintains an ownership or majority ownership interest. Section II(D), the contested section here, states that "member" includes "anyone else while using, with your permission, any automobile . . . ." (emphasis omitted). Section II(A)–(C) all define members as either the city or those acting on its behalf. It is therefore reasonable to conclude that section II(D)'s language, defining member as "anyone else" using the trolley with the city's permission, similarly requires a member to be affiliated or associated with the city. Cf. Nat'l Sun Indus., 596 N.W.2d at 48–49.

The lack of any reference to trolley passengers in the agreement's definition of member is also significant. Section II(A)–(D) of the agreement do not designate passengers or pedestrians as members. If SDPAA and the city had intended trolley passengers to be included as members, they could have easily been plainly designated in section II. Instead, section II(A)–(C) define member to include the city or one affiliated with it. Reading section II(D) to include passengers and others unaffiliated with the city as members would be an improper judicial enlargement of the agreement's term "member." See Elliot, 523 N.W.2d at 102.

Goddard suggests that her interpretation of member to include passengers is not impermissibly broad because many persons would still be nonmembers under the agreement. Her examples include a person leaning on the door to speak with the driver or one jumping on the bus to give a purse to a passenger. Goddard concedes that such hypothetical individuals would not be members under the agreement but only for the reason that they would not be using a vehicle "with [the city's] permission" as is required under section II(D). Her expansive reading would permit any paying passenger to receive all the benefits of membership under the agreement, including medical coverage and loss of wages and salary. That interpretation is

contrary to the plain language of the agreement and would greatly expand the scope of coverage set out by the city and SDPAA.

The use of the term "member" in other provisions of the agreement is instructive. See Nat'l Sun Indus., 596 N.W.2d at 48. For example section III(K) provides that SDPAA will pay

> reasonable expenses incurred for necessary medical and funeral services to: (1) a member who sustains injury caused by an occurrence while in, on, getting into or out of an automobile; (2) a member, while a pedestrian, when struck by an automobile; or (3) **anyone else** who sustains injury caused by an occurrence arising out of your covered operations while in, on, getting into or out of an automobile.

(some emphasis omitted and bolded emphasis supplied).

Section III(K) is useful in interpreting the meaning of "member" because its subparts (1) and (2) apply to members while its subpart (3) contemplates coverage for nonmembers. The most natural reading of "anyone else" in section III(K)(3) is that the provision could be invoked by trolley passengers seeking coverage for reasonable expenses for medical and funeral services covered by an automobile injury. If passengers were members under the agreement, as urged by Goddard, then they could seek medical coverage under sections III(K)(1) or (2) and section III(K)(3) would be rendered superfluous. Such a reading would improperly make section III(K)(3) "strained" and "unusual." Rumpza v. Donalar Enters., 581 N.W.2d 517, 521 (S.D. 1998) (citation omitted).

Section III(N) would also have an improperly strained meaning if one attempted to include passengers in the definition of members. See Rumpza, 581 N.W.2d at 521. This section provides that SDPAA "will pay the reasonable expenses, including actual loss of wages or salary, incurred by the member, at our request, in assisting us in the investigation or defense of any claim." (some emphasis omitted). This section

provides compensation for city employees and affiliated others who aid in an investigation or defense of a claim. Goddard does not fit within that coverage.

Interpreting the agreement to include passengers as members would expand the scope of risk contemplated by SDPAA and the city. See Opperman, 566 N.W.2d at 490. South Dakota established procedures in 1986 to provide a limited waiver of sovereign immunity so that individuals could bring claims against public entities and their employees to the extent they participated in a risk sharing pool or purchased liability insurance. Hansen v. S.D. Dep't of Transp., 584 N.W.2d 881, 883–84 (S.D. 1998). Those procedures were expanded in 1991 to include the state and its "employees, officers, or agents" in the limited waiver of sovereign immunity. See Kyllo v. Panzer, 535 N.W.2d 896, 900 (S.D. 1995).

South Dakota also established a liability pool known as the SDPAA to pay "valid tort claims against all member public entities of the state and their officers and employees for all liability they may incur based upon negligence in the operation of motor vehicles or negligence in performing other acts within an employee's scope of employment." Hansen, 584 N.W.2d at 883–84 (citation omitted); see also S.D. Pub. Entity Pool for Liab. v. Winger, 566 N.W.2d 125, 126 (S.D. 1997). While SDPAA has included underinsured motorist coverage in this agreement with the city, the South Dakota Supreme Court has stated that it is meant "for employees injured in the scope of employment and while acting on behalf of or in the interest of their employers." Winger, 566 N.W.2d at 126.

This history evidences that in establishing a risk sharing pool, South Dakota attempted to provide only a limited waiver of sovereign immunity. The agreement shows that SDPAA and the city contemplated including only those associated or affiliated with the city as members. South Dakota repeatedly emphasized that waiving sovereign immunity and entering the risk sharing pool was intended for valid tort claim against public entities and those affiliated with them. In Winger, 566 N.W.2d at 126, the South Dakota Supreme Court stated that underinsured motorist coverage

is meant for those "acting on behalf" of a public employer. Goddard's interpretation of the term member would expand the risks contemplated by the city and SDPAA by allowing passengers who are not associated or affiliated with the city to obtain uninsured motorist coverage. Such an interpretation of the agreement would "hardly fit[] within the risk the parties contemplated." Opperman, 566 N.W.2d at 491.

We conclude that the context of the language in the SDPAA agreement as a whole and the risks insured under it show that the term member is unambiguous and refers to those performing a public service or acting in the same capacity as a city employee. The natural reading of the language in the agreement illustrates that members do not include passengers such as Goddard who pay the $1.00 fare to ride the trolley. Goddard already settled with the city for the negligence leading to her accident, and she has not shown that she is entitled to coverage under the uninsured motorist provision of the SDPAA agreement.

Accordingly, we affirm the district court.

_____